Noble Turnbow, Plaintiff-Appellee, v. Hayes Freight
Lines, Inc., Defendant-Appellant.

Term No. 57–M–2.

Fourth District.

October 8, 1957.

Released for publication November 6, 1957.

Baker, Kagy & Wagner, of East St. Louis (Bernard H. Bertrand, of counsel) for appellant.

Listeman and Bandy, of East St. Louis, for appellee.

JUDGE BARDENS delivered the opinion of the court.

Plaintiff recovered a $65,000 judgment in a jury trial in the Circuit Court of St. Clair county for personal injuries sustained in a collision between plaintiff's truck and a truck tractor leased by defendant and driven by one of its employees. The trial court denied defendant's motion for a directed verdict and for a new trial. The defendant's theory on appeal is that the verdict and judgment are erroneous and against the manifest weight of the evidence because (1) the accident did not arise out of the scope of the employee-driver's employment, and (2) there was a failure of proof on the relationship of the injuries to the accident. Defendant also urges that the trial court erred in denying its motion to require plaintiff to submit himself for physical examination.

Plaintiff, a 41 year old truck farmer, wholesales produce from the market in St. Louis to various cities in Central Illinois. On the night of June 24, 1954, he was driving his panel truck westerly along U. S. Highway 40, a four-lane highway, near the city of East St. Louis, when he collided violently with the right rear of defendant's tractor as defendant's employee attempted to turn left from the westbound inner lane to the eastbound lanes. The testimony of the parties as to how the impact arose is in sharp conflict, but need not be detailed or analyzed because of another feature of the case which we deem to be controlling. Plaintiff was taken by ambulance to the hospital where he remained until the following noon when he returned to his home. The injuries claimed by plaintiff are permanent and

58

progressive damage to the cervical region of the spine and to the central nervous system.

Plaintiff's medical testimony was presented by four doctors. The first, a general practitioner, rendered emergency treatment at the hospital and testified as follows: initial examination revealed numerous abrasions and bruises on the back and head, and tenderness in the neck, spine and back; X-rays showed no fractures or dislocations; examination by manipulation indicated an injury to the spine or muscular strain; the patient was discharged from the hospital twelve hours after his admission on his insistence though he was advised to stay; he was instructed to obtain further medical treatment; the hospital record stated plaintiff might go home if X-rays were negative and that he was "markedly improved." The second doctor, likewise a general practitioner, testified that he had treated plaintiff for routine ailments prior to the accident; that upon examination after the accident he prescribed pain pills and suggested a Thomas collar to immobilize the neck, a rib belt because of pain in the chest, and referred him to a neurologist; that his treatment of plaintiff was primarily for his aches and pains and dizzy spells, and that he'd seen him about six times following the accident. The next medical witness was a specialist in nervous and mental diseases who first saw plaintiff eight months after the accident, and concluded there was injury to the nerve supply, the spinal cord and the part of the brain from which these nerve centers originate; that from sensory and reflex tests and X-rays, taken in the course of further examinations, he concluded that plaintiff had a disc injury in the lumbar spine region and epilepsy; that the accident was the direct cause of plaintiff's condition.

The final medical witness, an orthopedic specialist, examined plaintiff eight months after the accident and found no dislocation or fractures; tests of the reflexes

indicated soft tissue and nerve injury and plaintiff was therefore referred to the neurologist for examination; subsequent examinations, four in number, indicated plaintiff was steadily worsening and had sustained injury to the central nervous system, the brain, the spinal cord and the nerves running from the nerve roots of the spinal cord; X-rays taken in a recent examination showed a narrowing of some of the apophyseal articulations which indicated less mobility of the bones in the neck; the doctor concluded that such condition "could and did" result from the accident and that his general condition was permanent and he would be unable "to do work and hold a job." The doctor also testified that "plaintiff's fits, spells or blackouts or epilepsy" are due to an injury to the cortex of the brain. Plaintiff has worn the Thomas collar continuously since it was prescribed shortly after the accident.

Defendant contends that this medical testimony rests largely on speculation and conjecture and that the court erred in permitting the doctors to state categorically that the accident in their opinion caused the subsequent medical condition; that the jury verdict is grossly excessive when viewed in the light of plaintiff's twelve-hour stay in the hospital and the nature of his subsequent medical care. Defendant also contended in its motion for a new trial that it had newly discovered evidence of plaintiff's condition prior to the accident which would bear on the issue of his present condition; finally, defendant urges that under the recent Supreme Court pronouncement, People ex rel. Noren v. Dempsey, 10 Ill.2d 288, the defendant should have been required to submit himself for a physical examination, as requested by defendant.

In our view, the key question raised is as to the sufficiency of the medical evidence linking plaintiff's condition to the accident. While normally, a matter best left for the jury's determination, here, we have con-

cluded that a fair consideration of this issue by the jury was foreclosed by testimony of two experts which categorically related the accident and subsequent medical condition. Doctor Barnes, a neurologist of eminence, asserted in the course of his testimony, "The accident is the cause of epilepsy." Doctor Miller, a man 70 years old, with wide experience in the field of orthopedics, in his testimony emphatically informed the jury, "The condition found here could and did result from that injury." Defendant's objection to the latter testimony was overruled. It seems clear under our law that such testimony was improper and invaded the province of the jury since a dispute existed as to whether the accident caused the injury. Kimbrough v. Chicago City Ry. Co., 272 Ill. 71; Santiemmo v. Days Transfer, Inc., 9 Ill. App.2d 487, 133 N.E.2d 539; Zbinden v. Demoulin Bros. & Co., 245 Ill. App. 248; 18 I. L. P., Evidence, p. 436. In the Kimbrough case the court held it was prejudicial error to permit medical testimony that the condition of the patient was caused by the accident. The court said:

"The physicians in the case settled the question by their direct and positive testimony that the tumor and the neurasthenia or nervousness of the defendant in error were caused by the collision. The jury had nothing left to do but to proceed to award large damages under this evidence."

In the recent Santiemmo case, it was said;

"The rule has been laid down repeatedly by our courts that, only where there is no dispute as to whether or not plaintiff was injured as a result of the occurrence in question can the expert categorically state that the injury did or did not cause the physical or mental conditions complained of."

Here the issue as to relation of accident and injury was in sharp dispute because of the following factors: plaintiff's long history of prior medical care and four

previous accidents; his head and back injury sustained in a fall from a hay wagon or tractor within one year previous to the instant accident; his very brief stay in the hospital at the time of this accident and the absence of objective signs of any serious injury at that time; the general nature of the medical diagnosis given, e. g., "injury to the brain" and "injury to the central nervous system" unsupported by admittedly accepted objective tests, such as an encephalogram, designed to determine brain injury.

In the face of such a sharp dispute on whether this or a prior accident caused plaintiff's medical condition, and the uncertainty cast on such issue by the above factors, the jury might naturally seize on the improper testimony of the two highly respected experts to resolve their doubt. Under such circumstances, it is not quibbling or a slavish devotion to form to require not only that the medical opinions be couched in the approved conditional language but that they avoid ultimate issues in the case. Indeed, professional caution and objectivity would seem to dictate that medical testimony be limited to the *possibility* of a causal relation between the history of an accident and a subsequent medical condition where there have been prior accidents. Yet here we find an expert stating with absolute certainty that the prior 1953 injury had no direct relationship to plaintiff's present condition, though he first examined plaintiff eight months after the most recent accident. As foundation for such opinion, the doctor said that plaintiff could not have been driving to market in 1954 had the prior accident brought about his condition; yet the evidence showed plaintiff had bought a new truck since the accident and had done some work with it.

We can conceive of cases where an incidental invasion of the province of the jury in expert testimony might be of a slight consequence. But, in the face of

such a complex medical picture as exists, here, we feel the ultimate issue should be submitted to the jury free of such persuasive partisan opinion. Nor is it any defense that questions asked such experts were in the approved form and the unwarranted emphasis wholly volunteered by the doctors, for no effort was made to correct the testimony or to caution the doctors to properly limit their answers.

We, therefore, conclude that it was prejudicial error to permit the two experts, Doctor Barnes and Doctor Miller, to invade the province of the jury by stating their conclusion on the ultimate issue of causal relation and the case must be reversed and remanded for a new trial. At such time the defendant's request for a physical examination of plaintiff can be reconsidered in the light of People ex rel. Noren v. Dempsey, 10 Ill.2d 288.

Inasmuch as the case must be retried, we will not comment on error urged by defendant having to do with the weight of the evidence. However, since there is no dispute on the particular facts, it is appropriate to consider the allegation of error in the ruling by the trial judge at the close of the evidence that defendant's driver as a matter of law was acting within the scope of his employment at the time of the accident. It is agreed that the driver, whose home was in Louisville, Kentucky, was an employee of defendant, that the tractor was being purchased by the driver but was under lease to defendant, and was used exclusively in defendant's business and under a Certificate of Convenience and Necessity issued to defendant by the Interstate Commerce Commission. The time of the accident was fixed at 12:05 A. M. by the State Police. The evidence showed that defendant's driver had just finished a 350 mile trip and had dropped his trailer at defendant's lot on highway 40 about one and one-half miles from the scene of the accident between 11:45 and 12:00 P. M.

Having driven ten hours, he was then required by I. C. C. rules to have at least eight hours rest before another trip. There were no sleeping accommodations at defendant's lot. He therefore left defendant's lot and headed for a motel one and one-half miles away on the highway where he had previously stayed and was turning across the highway to the motel when the accident happened. While he had not yet received a particular assignment for the following day, he was instructed by defendant to call in to ascertain his next job. From this factual situation, it seems clear that while the particular assignment given its employee by defendant had terminated, nonetheless, he was continuing to conduct himself within a framework of I. C. C. and company rules which were as much a part of his employment as the actual trip. Louisville, Kentucky, his home, was many miles away. Before his next assignment, he would have been required to certify that he had obtained sufficient rest and otherwise fulfilled I. C. C. & Company requirements. Therefore, in a real sense, defendant continued to exercise such direction and control over their driver. Since no factual dispute existed, the question became one of law and we believe the trial judge ruled properly thereon.

For the reason stated, the case is reversed and remanded for a new trial.

Reversed and remanded.

CULBERTSON, P. J. and SCHEINEMAN, J., concur.