**Raymond Spiotta, Plaintiff-Appellee, v. William W. Hamilton and Eagle Food Centers, Inc., Defendants-Appellants.**

**Gen. No. 69–118.**

Second District.

March 23, 1970.

Corrigan, Mackay, Quetsch and O'Reilly, of Wheaton, for appellants.

Rathje, Woodward, Dyer and Burt, Peter A. Zamis, of Wheaton, for appellee.

MR. JUSTICE SEIDENFELD delivered the opinion of the court.

Raymond Spiotta recovered a judgment for personal injuries, based on a jury verdict, against William W. Hamilton and his employer, Eagle Food Centers, Inc.,

defendants, in an action arising from an intersectional collision.

On appeal defendants urge that the verdict and a special finding that plaintiff was free of contributory negligence are against the manifest weight of the evidence, and that the court should have directed a verdict finding plaintiff guilty of contributory negligence as a matter of law. The defendants, additionally, claim prejudicial trial errors precluded a fair trial, including the giving and refusing of certain instructions and rulings on objections to closing argument of plaintiff's counsel.

The action occurred approximately 3:30 p. m. on Saturday, December 10th, 1966. The day was overcast with sporadic snow flurries. The intersection was regulated by traffic lights, but at the time of the occurrence, the lights were inoperative as a result of a mechanical failure.

Hamilton, operating a vehicle owned by Eagle Food Centers, was traveling in an eastbound direction on Route 56 as he approached its intersection with the Wheaton-Naperville Road in a rural area. Spiotta was traveling northbound on the Wheaton-Naperville Road. Both were two-lane highways.

Spiotta testified he was familiar with the intersection, and when he was about two-tenths of a mile from the intersection he noticed that the stop-and-go lights were inoperative. He began to slow his car and when he was about 200 feet south of Route 56, approaching 30 to 35 miles per hour, he activated his left turn signal, intending to turn left, which would take him westbound on Route 56. There was a northbound car ahead of him, not yet to the intersection. He stopped some distance from the intersection behind the other northbound car and saw southbound and westbound cars stopped at the intersection. He first noticed the defendant Hamilton's car when it was about 500 feet to the west, moving 50 to 55 miles per hour. When he saw

the northbound car ahead of him move out, he moved up to the intersection and stopped again. He observed other vehicles southbound and westbound which came up to the intersection and took turns proceeding from a dead stop. Other southbound and westbound vehicles were also coming up and stopping behind these cars and halting.

Plaintiff testified that he then looked to the west and saw Hamilton's car for the second time, at which time the car was about 200 feet from the intersection and "slowing up quite rapidly." He estimated Hamilton's speed at that time to be 30 to 35 miles per hour. He then glanced to the north to check the southbound traffic, looked to the east to check the westbound traffic, and slowly entered the intersection. He did not see Hamilton's car again prior to the impact, but estimated that Hamilton's car was about 100 feet from the intersection when he entered, relying on his judgment.

At impact he was in the first gear, going about 3 miles per hour. He heard the sound of a brake, which first called his attention to the occurrence of a collision, and immediately glimpsed a part of the Hamilton car in contact with his vehicle. When his car was struck, plaintiff had traveled 20 feet or almost to the center line of Route 56. He did not honk his horn or swerve prior to impact. There were no obstructions to plaintiff's view of the Hamilton car. He did not see any other cars moving at or near the intersection when he started his turn. When he started into the intersection he did not see that Hamilton's car was stopped.

Defendant Hamilton testified that when he was about one-half mile from the intersection he was traveling 50 to 55 miles per hour. There were no other eastbound vehicles between defendant and the intersection. Route 56 is a straight road for a distance of one-half mile west of the intersection, with a slight downhill grade. When he attained this point, he was able to get a clear

view of the intersection, to observe the existence of traffic control lights and also to observe an accumulation of cars at the intersection. He observed a northbound car approach the intersection, come to a stop, and then turn or go north through the intersection. At the time that car went through the intersection, defendant was about a quarter of a mile from the scene. He reduced his speed from 50 to 55 miles per hour down to 30 to 35 miles per hour by taking his foot off the accelerator.

As he approached within one block from the scene he saw a westbound car turn right, and at that same distance from the intersection observed plaintiff Spiotta's vehicle slowly come to a stop. Defendant's speed was 30 to 35 miles per hour at this time; he never decreased his speed any further until the time he reached the western part of the intersection at which point he slammed on his brakes just prior to the collision.

Defendant further testified that plaintiff's vehicle was about 8 feet south of the edge of Route 56 when it came to a full stop. When Hamilton arrived at the western part of the intersection still traveling 30 to 35 miles per hour, he saw the plaintiff start to pull out. He was about 20 feet from the plaintiff's vehicle at this time. The accident occurred in the southeast quadrant of the intersection.

Hamilton stated that he had a conversation with the plaintiff after the accident and that Spiotta asked the whereabouts of the "other guy" who was in the accident; that he identified himself and that Spiotta said, "Well, where the hell did you come from?" (But the plaintiff recalled no conversation with the defendant.) Hamilton further testified that he observed his skid marks and pointed them out to trooper Allen. (But Allen who testified, did not have a notation of the skid marks listed on his report and had no independent recollection.) The defendant stated that he did not sound his horn prior to the accident.

Defendants argue that the undisputed testimony of plaintiff that he did not look to his left after seeing the defendant Hamilton 200 feet away moving 30 to 35 miles per hour amounts to contributory negligence as a matter of law.

Defendants cite Sharp v. Brown, 343 Ill App 23, 98 NE2d 122 (1951) and Kirchoff v. Van Scoy, 301 Ill App 366, 22 NE2d 966 (1939). Both cases are authority for the proposition that a driver of the vehicle approaching the intersection from the right cannot, as a matter of law, proceed upon the conclusive presumption that a vehicle approaching from his left will yield the right-of-way, but these cases are not applicable on thier facts.

■■ Here the plaintiff did not proceed into the intersection without looking at any time in reliance on a preferential right-of-way. After looking, whether it was reasonable for the plaintiff to assume that Hamilton would stop his slowing vehicle at the intersection was properly a question for the jury. While defendants argue that it was contributory negligence as a matter of law for plaintiff not to look a second or third time before entering the intersection, this, also, was a question for the jury. See Neurohr v. Richmond, 78 Ill App2d 467, 472, 222 NE2d 808 (1967); Quigley v. Crawford, 19 Ill App2d 454, 458, 153 NE2d 867 (1958); Bennett v. Boyer, 111 Ill App2d 426, 429, 250 NE2d 316 (1969).

■■ Defendants claim error in the giving of a "right-of-way" instruction under the circumstances of the case. (IPI 70.02, 60.01.) The instruction is properly used only when motor vehicles approach an unprotected intersection. Under the particular circumstances of this case, however, we believe that this was such an intersection, at the time of the accident. While the exact question does not seem to have been decided in this state, it would appear on reason that a right-of-way instruction is properly applied to the intersection of two

393

nonpreferential roads, both when signals are nonexistent or temporarily out of operation. This has been the holding in several other jurisdictions. See Montalbano v. Hall (La), 108 So2d 16, 19 (1958) and Coshun v. Mauseau, 62 Ohio App 249, 23 NE2d 656, 657 (1939). Vierke v. Sunset Valley Creamery Co., 58 Ill App2d 323, 329, 208 NE2d 305 (1965), cited by defendants does not represent a contrary view, in our opinion. There one of the roads was a preferential road and the stop sign for the crossing stop street was temporarily down. The plaintiff knew that it was down and, in fact stopped, so that it could not be said that an unprotected crossing was actually involved.

The Court did not err in refusing to give an instruction with reference to plaintiff's testimony having been impeached. The plaintiff had testified that at the moment of the impact he had "heard something." Plaintiff did not deny hearing the brake and it was not impeaching material to quote from a deposition that the plaintiff did hear the sound of the brake. The plaintiff also did not recall a conversation with the defendant after the accident. He did not deny a statement and the fact that the defendant Hamilton testified to a statement was not the kind of impeachment which would warrant the instruction.

Nor was it error for the court to instruct the jury that Hamilton was an agent of the defendant Eagle Food Centers, Inc. as a matter of law. The testimony was undisputed that Hamilton would leave his home, go to his various stops, merchandise, sell and display Eagle Food Company bread and then return to his home without going to a home office to report. And he was driving a car that was given to him by the corporate defendant. The evidence raised no question of fact for the jury to decide on the question of agency. See Urban v. Industrial Commission, 34 Ill2d 159, 161–4, 214 NE2d 737 (1966).

■ We have also examined the closing arguments and have found no prejudicial error in the court's rulings thereon.

■ ■ We find that there was substantial evidence to support the general verdict and the special finding in favor of the plaintiff, and that the court did not err in denying defendants' motion for a directed verdict under the standards established in Pedrick v. Peoria & Eastern R. Co., 37 Ill2d 494, 510, 229 NE2d 504 (1967).

We, therefore, affirm the judgment below.

Affirmed.

DAVIS, P. J. and MORAN, J., concur.