**Sara PRICE, Plaintiff-Appellant,**

v.

**David M. WESTMORELAND, et al., Defendants,**

**Utah Carriers, Inc., Defendant-Appellee.**

No. 83–1440

Summary Calendar.

United States Court of Appeals, Fifth Circuit.

March 19, 1984.

Rehearing and Rehearing En Banc Denied April 16, 1984.

Thomas J. Griffith, Ralph H. Brock, Lubbock, Tex., for plaintiff-appellant.

Richards, Caine & Richards, John T. Caine, Ogden, Utah, for defendant-appellee.

Before GEE, POLITZ and JOHNSON, Circuit Judges.

GEE, Circuit Judge:

Plaintiff Sara Price was injured in a truck accident caused by the negligent driv-

ing of defendant David Westmoreland, a truck driver for defendant Utah Carriers, Inc., an interstate trucking company. The district court found that Westmoreland was negligent and that plaintiff sustained damages in the amount of $125,000, but applied Texas common law of agency to deny any recovery against Utah Carriers.

Plaintiff appeals, arguing that although this is a diversity case, federal regulation of interstate carriers preempts state law and renders Utah Carriers liable as a matter of law, citing *Simmons v. King,* 478 F.2d 857 (5th Cir.1973). We agree and reverse, holding that under the applicable federal law Utah Carriers is vicariously liable as a matter of law.

### I.

Utah Carriers is a common carrier incorporated in Utah and operating interstate under authority of the Interstate Commerce Commission (ICC).[1] The driver in this case, David H. Westmoreland, was an owner/operator who had leased his tractor to Utah Carriers pursuant to ICC requirements, making him a statutory employee of the company. At the time of the accident that gave rise to this suit, he was hauling a load of lumber from Sheridan, Wyoming, to Dallas, Texas, for Utah Carriers.

Westmoreland met Price on January 7, 1980, at a truck stop in Sheridan where she was a waitress. He told her that he was following his assigned route to Oklahoma City and that if she came with him she could become a truck driver for Utah Carriers by attending a truck driver's school in Oklahoma City, with pay, before qualifying as a truck driver herself. Price agreed to ride with him to Oklahoma City. Contrary to Westmoreland's representations to Price, Utah Carriers had not given Westmoreland permission to transport unauthorized passengers while working for Utah Carriers or to solicit employees for the company. No one in Utah Carriers' offices had any contact with plaintiff before her injuries concerning her training as a truck driver or her employment with Utah Carriers.

By January 10, 1980, Westmoreland and his passenger, following the assigned route south, had reached the junction of Interstate Highway 40 East at Amarillo, Texas, which would take them toward Oklahoma City. Westmoreland was speeding. As he manuevered a sharp curve of the on-ramp to change highways to Interstate 40, Westmoreland's load shifted causing the cab and its trailer to overturn. As a result of the accident, Price sustained multiple fractures including a fractured vertebrae, sternum and pelvis, together with extensive bruises and a ripped left ear.

The district court, sitting without a jury, found that Westmoreland was negligent in the handling of his truck and trailer at the time of the accident, in operating it at an excessive, dangerous, and unreasonable speed under the circumstances, in failing to reduce his speed in obedience to the warning sign posted on the on-ramp, and in failing properly to arrange, stack, and secure a cargo on a trailer for highway travel so that it would not shift or change its center upon the stress of turning sharp curves. Furthermore, the district court found that Westmoreland's negligence was the proximate cause of plaintiff's injuries and that she incurred damages in the amount of $125,000 for (a) pain and suffering, (b) diminished earning capacity, (c) loss of past wages, (d) reasonable and necessary future medical expenses. However, the district court then applied Texas common law of agency to absolve Utah Carriers of any liability to plaintiff on the ground that Westmoreland, whom the court found to be the company's agent, exceeded the bounds of his actual or apparent authority when he induced Price to ride with him. Plaintiff argues that the district court erred in applying Texas common law and that under the ICC regulations which govern this case, Utah Carriers is vicariously liable as a matter of law.

---

**1.** The description of facts is taken from the district court's findings of fact which are in no part contested.

## II.

In order to protect the public from the tortious conduct of judgment-proof operators of interstate motor carrier vehicles, Congress in 1956 amended the Interstate Common Carrier Act to require a motor carrier to assume full direction and control of leased vehicles. 49 U.S.C. §§ 10927(a)(2) and 11107(a)(4) (formerly 49 U.S.C. §§ 315 and 304(e)(2) respectively).[2] Pursuant to these regulations the ICC has promulgated written lease requirements for interstate carriers such as Utah Carriers which require the carrier lessee to "assume complete responsibility for the operation of the equipment for the duration of the lease." 49 C.F.R. § 1057.12(d)(1).[3] These regulations are valid and constitutional, *American Trucking Associations v. United States*, 344 U.S. 298, 73 S.Ct. 307, 97 L.Ed. 337 (1953). In *Simmons v. King*, 478 F.2d 857, 860 and 866 (5th Cir.1973),[4] we held that they preempt state law in tort actions in which a member of the public is injured by the negligence of a motor carrier's employee while operating an interstate carrier vehicle, observing that "it is critical that ICC regulations and the lease mandated by them have supreme controlling significance."[5]

Adopting the language and holding of the United States District Court for the District of Delaware in *Cosmopolitan Mutual Insurance Company v. White*, 336 F.Supp. 92, 98 (D.Del.1972), *Simmons* held that "the ICC carrier's liability for equipment and drivers covered by leasing arrangements is not governed by the traditional common law doctrine of master-servant relationships and respondeat superior." 478 F.2d at 867. The *Simmons* court went on to hold that under the statutorily mandated terms of the lease, the carrier lessee had "assumed exclusive possession, control, and use of the vehicle and responsibility to the public, [the driver] became his statutory employee, and as such [the carrier] was vicariously liable *as a matter of law* for the negligence of [the driver]." *Id.* (emphasis added).

*Simmons* governs this case. Since § 1057.12(d)(1) required Utah Carriers'

---

2. 49 U.S.C. § 10927(a)(2) provides, in pertinent part:

   * * * To protect the public, the Commission may require any such motor carrier to file the type of security that a motor carrier is required to file under paragraph (1) of this subsection.

   Paragraph (1) specifies an insurance policy as a type of security. *Transport Indemnity Company v. Paxton National Insurance Company*, 657 F.2d 657, 659, n. 3 (5th Cir.1981).

   49 U.S.C. § 11107(a)(4) requires an authorized carrier to:

   (4) have control of and be responsible for operating those motor vehicles in compliance with requirements prescribed by the Secretary of Transportation on safety of operations and equipment, and with other applicable law as if the motor vehicles were owned by the motor carrier.

   Section 11107 was amended by P.L. 96–296, § 15(d), 94 Stat. 809, (1980), and this provision was codified without change as 49 U.S.C. § 11107(a)(4).

3. 49 C.F.R. § 1057.12(d)(1) provides:

   (1) The lease shall provide that the authorized carrier lessee shall have exclusive possession, control, and use of the equipment for the duration of the lease. The lease shall further provide that the authorized carrier lessee shall assume complete responsibility for the operation of the equipment for the duration of the lease.

   Section 1057 was reorganized and revised, 44 F.R. 4681 (January 23, 1979), effective March 26, 1979, 44 F.R. 11070 (February 27, 1979). Section 1057.12(d)(1) replaced the former § 1057.4(a)(4), which controlled *Simmons v. King, infra.*

   Section 1057.12(d) was revised again, effective March 31, 1980, 45 F.R. 13092, 13093 (Feb. 28, 1980), after this cause of action arose, but subdivision (d)(1) was not affected by that revision. As the ICC said in its proposal, "We do not intend for this revision to change substantively any of the Commission's leasing regulations which were in effect prior to the institution of this proceeding." 44 F.R. 18465 (March 27, 1979).

4. *Simmons*, like this case, was a diversity action. 478 F.2d at 859.

5. An analogous result might well obtain under Texas law, in any event, since Texas in 1953 enacted a statute that, like the ICC regulations, abrogates the common law doctrine of agency and *respondeat superior* and makes the motor carrier liable for injury to the public caused by the negligence of its drivers. Tex.Rev.Civ.Stat. Ann. art. 67016–1; *see Greyhound Van Lines v. Bellamy*, 502 S.W.2d 586 (Tex.Civ.App.— Waco, 1973, no writ hist.)

lease to provide that it was to have "exclusive possession, control and use of the equipment for the duration of the lease," and that it was to "assume complete responsibility for the operation of the equipment for the duration of the lease," Westmoreland became Utah Carriers' statutory employee. Under *Simmons,* that made Utah Carriers vicariously liable as a matter of law for Westmoreland's negligence and the traditional common law doctrine of master-servant relationships and respondeat superior does not apply.[6]

Utah Carriers argues that the exception to the *Simmons* rule for co-employees established in *White v. Excalibur Insurance Co.,* 599 F.2d 50, 55 (5th Cir.), *cert. denied,* 444 U.S. 965, 100 S.Ct. 452, 62 L.Ed.2d 377 (1979), should be extended to allow it to escape liability to Price for Westmoreland's negligence. In *White,* we held that the policy underlying the ICC regulations and the *Simmons* rule did not apply to co-employees of motor carriers injured by their fellows' negligence since they could recover from their employer in workmen's compensation. However, as we restated in *White,* those of "the public who are not directly engaged in furthering the economic interest of the carrier . . . are made its responsibility under § 304." 599 F.2d at 55. Extension of the co-employee exception to members of the public such as Price would defeat the statutory mandate that the pertinent ICC regulations imposing liability on the carrier are "to protect the public." 49 U.S.C. § 10927(a)(2).

We hold that plaintiff may recover from Utah Carriers. The judgment of the district court is

REVERSED.

**6.** It is thus irrelevant that Utah Carriers had not given its permission for Westmoreland to carry plaintiff as a passenger in the truck, or even that Utah Carriers was unaware of her presence. *See, e.g., Rodriguez v. Ager,* 705 F.2d 1229 (10th Cir.1983), (where truck leased to a licensed ICC carrier and bearing carrier's insignia and ICC number was being driven for personal use, ICC regulations rendered carrier nonetheless liable for the driver's negligence);

*Mellon National Bank & Trust Company v. Sophie Lines, Inc.,* 289 F.2d 473, 475 (3d Cir.1961) (ICC carrier liable for negligence of driver using truck for personal use); *see also Cox v. Bond Transportation, Inc.,* 53 N.J. 186, 249 A.2d 579 (1969); *Turnbow v. Hays Freight Lines, Inc.,* 15 Ill.App.2d 57, 145 N.E.2d 377 (1957); *National Trailer Convoy, Inc. v. Saul,* 375 P.2d 922 (Okl.1962); *Felbrant v. Able,* 80 N.J.Super. 587, 194 A.2d 491 (1963) (same).