JACK J. GIANNOBLE, Special Adm'r to the Estate of Anthony S. Giannoble, Deceased, Plaintiff-Appellant, v. P AND M HEATING AND AIR CONDITIONING, INC., Defendant-Appellee.

First District (1st Division)   No. 1—90—3648

Opinion filed August 17, 1992.

1052

Brenda A. Szeja, of Chicago, for appellant.

Tressler, Soderstrom, Maloney & Priess, of Chicago (Gary T. Jansen and Kathleen M. Gibbons, of counsel), for appellee.

PRESIDING JUSTICE BUCKLEY delivered the opinion of the court:

Plaintiff, Jack J. Giannoble, as special administrator of the estate of Anthony S. Giannoble, deceased, filed a two-count complaint for wrongful death based upon an automobile accident in which a van, owned by defendant P & M Heating and Air Conditioning, Inc. (P & M), and driven by defendant William Smith (Smith), collided with the deceased's vehicle. Count I of the complaint sought recovery against Smith individually, and count II sought recovery against P & M under a theory of *respondeat superior*. In its answer, P & M admitted ownership of the van and being Smith's employer but denied all remaining material allegations.

P & M subsequently moved for summary judgment alleging that Smith, at the time of the accident, was not within the scope of his employment. Plaintiff appeals the circuit court's grant of P & M's motion contending that genuine issues of material fact exist on the scope of employment issue and that pending discovery matters rendered summary judgment premature. We affirm.

To support its motion for summary judgment, P & M submitted the sworn deposition testimony of Smith, and the sworn affidavit of Thomas Vaccaro, P & M's service manager at the time of the accident.

The deposition testimony of Smith reflects that on July 23, 1986, P & M employed Smith as a heating, air conditioning, refrigeration and ventilation service technician. Smith worked a 40-hour work week and was on 24-hour call approximately one week per month. Smith was not on call July 23.

In the course of his employment, P & M provided Smith with a service van which contained the tools necessary for Smith to complete his work. Since Smith normally called into P & M's Summit plant each morning from his Blue Island home to receive his first job assignment, and thereafter travelled to such job in the van, P & M permitted Smith to keep the van at home after work. All service technicians were provided a van and similarly were allowed to take their service vans home at night. Smith testified that he had general permission to use the van. Smith charged gasoline to a company charge account.

On July 23, 1986, Smith started work at 8 a.m., his normal work time. He received job assignments that day and finished his work at 4 p.m. Smith drove the company van directly home after completing work.

At home, Smith changed clothes, took a shower and ate dinner with his wife. While home, Smith's stepdaughter telephoned and related that she was having problems with her air conditioning unit at home. Smith agreed to look the unit over and make the repairs as a favor. Smith did not tell anyone at work about this work including Thomas Vaccaro, his supervisor. While Smith would normally complete a customer receipt on a service call, no customer receipt or other paper work was generated for this work.

Not knowing what the repair task would entail, Smith and his wife took the company van as it contained the tools Smith might possibly need. The two departed their home and first drove to the stepdaughter's beauty salon, arriving between 6:45 and 7 p.m. There, Smith, his wife and the stepdaughter conversed briefly. They agreed that Smith and his wife would first proceed to the stepdaughter's house so Smith could get a start on the unit. The stepdaughter would follow later. Accordingly, Smith, his wife and their grandson, who was at the salon, left the salon for the stepdaughter's home, located near 141st and Bell Avenue, in Will County.

At between 7 and 7:45 p.m., the three arrived, and Smith proceeded to look at the unit, which was in the backyard. At 10:45 p.m., Smith completed his work. Because it was a hot night and Smith was to work outside, Smith brought along his swimsuit and went swimming in his stepdaughter's pool after completing the work. At about midnight, Smith and his wife left for home. The accident which resulted in the deceased's death occurred during the drive home at about 1 a.m.

Smith testified that he has done other repair work as favors and not kept a record of such work. Other service technicians have similarly performed favors. Smith stated that P & M knows of this practice and it is acceptable to it.

Regarding Vaccaro's affidavit, Vaccaro states that he was P & M's service manager on July 23, 1986, and that service technicians like Smith are provided a van which they are allowed to take home. Vaccaro further states that Smith never asked for permission to use the van after normal working hours on the day of the accident; that he had no knowledge that the van was being so used at the time of use; that he is unaware of any P & M customer receipts or other paper work being issued to the stepdaughter; and that no P & M records exist which reflect the payment of consideration for such work.

In granting P & M's motion for summary judgment against plaintiff, the court concluded that no genuine issue of material fact existed on the scope of employment issue. During its oral ruling, the court was persuaded by Smith's deposition testimony that the air conditioning service he performed for his stepdaughter was not a P & M job, but rather a personal favor, performed six or seven hours after Smith had completed his daily work.

Plaintiff first contends on appeal that there exist "major, outcome-determinative factual differences precluding summary judgment" in this case. Plaintiff directs this court to Vaccaro's affidavit, which plaintiff asserts is internally conflicting, and also requests this court to compare the affidavit with Smith's testimony, which reveals yet another contradiction. Plaintiff additionally asserts that Smith's testimony differs from that of his wife in material respects. Finally, plaintiff asserts that an issue of fact exists merely on the fact that Smith was driving a service-equipped company van from an air conditioning repair job at the time of the accident.

Summary judgment shall be entered when "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Ill. Rev.

Stat. 1987, ch. 110, par. 2—1005(c).) The purpose of summary judgment is not to try an issue of fact, but rather to determine whether a triable issue of fact exists. *Sloan v. Jasper County Community Unit School District No. 1* (1988), 167 Ill. App. 3d 867, 870, 522 N.E.2d 334, 336.

The use of the summary judgment procedure is to be encouraged as an aid in the expeditious disposition of a lawsuit; however, it is a drastic means of disposing of litigation and therefore should be allowed only when the right of the moving party is clear and free from doubt. (*Purtill v. Hess* (1986), 111 Ill. 2d 229, 240, 489 N.E.2d 867, 871.) In determining the existence of a genuine issue of material fact, courts must consider the pleadings, depositions, admissions, exhibits, and affidavits on file in the case and must construe them strictly against the movant and liberally in favor of the opponent. *Purtill*, 111 Ill. 2d at 240, 489 N.E.2d at 871.

██ Summary judgment is generally inappropriate when scope of employment is at issue. (*Pyne v. Witmer* (1989), 129 Ill. 2d 351, 360, 543 N.E.2d 1304, 1308 (and cases cited therein).) Only if no reasonable person could conclude from the evidence that an employee was acting within the course of employment should a court hold as a matter of law that the employee was not so acting. *Pyne*, 129 Ill. 2d at 360, 543 N.E.2d at 1308.

██ For an employer to be vicariously liable for an employee's torts under the doctrine of *respondeat superior*, the torts must have been committed within the scope of the employment. (*Pyne*, 129 Ill. 2d at 360, 543 N.E.2d at 1308 (and cases cited therein).) No precise definition has been accorded the phrase "scope of employment," but broad criteria have been enunciated:

" '(1) Conduct of a servant is within the scope of employment if, but only if:

(a) it is of the kind he is employed to perform;

(b) it occurs substantially within the authorized time and space limits;

(c) it is actuated, at least in part, by a purpose to serve the master, ***

***

(2) Conduct of a servant is not within the scope of employment if it is different in kind from that authorized, far beyond the authorized time or space limits, or too little actuated by a purpose to serve the master.' " (*Pyne*, 129 Ill. 2d at 360, 543 N.E.2d at 1308, quoting Restatement (Second) of Agency §228 (1958).)

The burden is on the plaintiff to show the contemporaneous relationship between the tortious act and scope of employment. *Pyne*, 129 Ill. 2d at 360, 543 N.E.2d at 1309.

■ In this case, we initially reject plaintiff's attempt to create an issue of fact by asserting the existence of various conflicts in the testimony and affidavits. The conflicts are illusory and, to the extent they exist, are neither genuine nor material.

Plaintiff first alleges that paragraphs 4 and 6 of Vaccaro's affidavit are internally inconsistent. Paragraph 4 asserts that P & M service technicians such as Smith were provided with vans which they were allowed to take home. Paragraph 6 states that Smith never asked for permission to use the van after normal working hours on the day of the accident. We believe the two paragraphs are not inconsistent.

Next, plaintiff claims paragraph 6 conflicts with Smith's discovery deposition wherein Smith states he was given permission from Vaccaro to use the van. Plaintiff has again shown no inconsistency. What plaintiff fails to distinguish is P & M's grant to Smith of general permission to use the van and the absence of a specific authorization by P & M to use the van on the occasion in question. In his evidence deposition, plaintiff attempted to impeach Smith on this alleged inconsistency, but Smith clarified his prior testimony by noting the above distinction. Plaintiff has accordingly failed to demonstrate an issue of fact.

Finally, plaintiff claims that differences exist in the depositions of Smith and his wife. Whereas Smith testified that he and his wife first drove to the beauty salon, Smith's wife testified that she, Smith and their grandson went straight to the stepdaughter's house. How this bears on the scope of employment issue is not revealed by plaintiff; certainly, the differences do not create an issue of *material* fact.

We now turn to plaintiff's argument that summary judgment on the scope of employment issue was improper based on the facts that: (1) Smith was given general permission to use the company van; (2) P & M knew and accepted that its service technicians did after-hour jobs as favors; and (3) the accident occurred while Smith was driving home the company van from an air conditioning job.

■ Although not addressed by the parties, upon P & M's admission of ownership of the van, plaintiff is entitled to an evidentiary presumption that, at the time of the accident, Smith was P & M's servant and was acting within the scope of his employment at the time of the injury. (*Parrino v. Landon* (1956), 8 Ill. 2d 468, 470, 134 N.E.2d 311, 312; *Bell v. Reid* (1983), 118 Ill. App. 3d 310, 313, 454 N.E.2d 1117, 1119; *Wallace v. Smith* (1979), 75 Ill. App. 3d 739, 747,

394 N.E.2d 665, 671; *Paulsen v. Cochfield* (1935), 278 Ill. App. 596, 603; *Howard v. Amerson* (1925), 236 Ill. App. 587, 592-93.) The presumption, while rebuttable, creates a *prima facie* case and throws the burden of going forward with the evidence upon the defendant, who then must show nonagency at the time of the occurrence. (*Bell*, 118 Ill. App. 3d at 313, 454 N.E.2d at 1119; *Brill v. Davajon* (1964), 51 Ill. App. 2d 445, 450, 201 N.E.2d 253, 255.) If defendant produces such evidence, the presumption disappears, and the overall burden of proving agency remains on plaintiff where it started. *Brill*, 51 Ill. App. 2d at 450, 201 N.E.2d at 255-56; see also *McElroy v. Force* (1967), 38 Ill. 2d 528, 232 N.E.2d 708 (discussing operation of presumptions in an automobile case).

Whether the evidence adverse to the presumption is sufficient to overcome it, or whether the plaintiff has met his burden of proof, are usually questions for the trier of fact. (*Brill*, 51 Ill. App. 2d at 450, 201 N.E.2d at 256; *Paulsen v. Cochfield* (1935), 278 Ill. App. 596, 607-08.) However, they may become questions of law if the evidence is of such a character that but one reasonable deduction can be made. If the evidence adverse to the presumption is strong and unquestionable, and if the plaintiff introduces no evidence to sustain his burden, a verdict may be directed for the defendant. *Brill*, 51 Ill. App. 2d at 450-51, 201 N.E.2d at 256; *Paulsen*, 278 Ill. App. at 607-08.

■ In this case, we believe that P & M has presented facts which not only overcome the presumption of agency arising from its admission of ownership of the van, but also entitle P & M to judgment as a matter of law. Smith's deposition testimony clearly shows that not only had Smith completed his normal day's work, which ended near 4 p.m., but had arrived at home, showered and eaten dinner. After dinner, Smith then proceeded with his wife in the van to his stepdaughter's salon to pick up their grandson. The two arrived at about 7 p.m. Smith made this trip only after his stepdaughter called him at home and requested his services to repair her air-conditioner. Smith and his wife next proceeded with their grandson to the stepdaughter's house, arriving some time after 7 p.m. After completing the repairs at 10:45 p.m., Smith went swimming for an hour. Smith had brought his suit from home knowing he would swim because it was a hot July night and he would be working outside. At about midnight, Smith and his wife proceeded home. The accident in question occurred during this return trip, some eight hours after Smith had completed his regular day's work. Smith was not on call that evening.

In addition to the above facts, Smith testified that he charged his daughter no fee; he completed no customer paperwork; and that

P & M knew nothing of the repair job until after the accident. Vaccaro confirmed these facts in his affidavit.

On the above record, the circuit court properly entered summary judgment in favor of P & M. Several Illinois cases support this conclusion.

Most recently, in *Snodgrass v. Jones* (C.D. Ill. 1991), 755 F. Supp. 826, *aff'd* (7th Cir. 1992), 957 F.2d 482, Jones was the special agent in charge (SAC) of the Springfield, Illinois, office of the Federal Bureau of Investigation (FBI) on October 17, 1986. Shortly after 1 a.m., Jones struck an automobile driven by Snodgrass.

During the evening of October 16, Jones left work at the FBI office in Springfield driving a government-owned automobile. As the SAC, Jones was issued a radio-equipped vehicle for his use because he was "on-call" 24 hours a day and often would proceed directly from his home or other location to the office or crime scene in the course of his duties. After leaving his office, Jones stopped for dinner then proceeded to a bar in Springfield. Five hours later, Jones left; the accident in question occurred shortly after Jones' departure and while he was on his usual route home. *Snodgrass*, 755 F. Supp. at 827.

In finding that Jones, as a matter of law, was not acting within the scope of his employment at the time of the accident, the court rejected the argument that Jones was so acting because he "was a government employee, driving a government-owned vehicle which he had been authorized to use to maintain an emergency response capability, and at the time of the accident he was headed home along his usual route." (*Snodgrass*, 755 F. Supp. at 829.) In its analysis, the court distinguished other Illinois cases in which an employee was injured after hours while driving a company vehicle but was on company business at the time of the accident.

The court also rejected the argument that Jones was returning to his employment after engaging in a "frolic." The court noted that Illinois law has a two-pronged test to determine whether an employee engaged in a frolic has reentered his scope of employment. First, the employee must have formulated an intent to act in furtherance of his employer's business; second, the intent must be coupled with a reasonable connection in time and space with the work in which he should be engaged. *Snodgrass*, 755 F. Supp. at 830.

Applying this test to the facts before it, the court believed that Jones met neither. Jones had neither formulated the intent to act as an FBI agent after leaving the bar nor did any reasonable connection exist with his position as an FBI agent. The court stated that, hypothetically, if Jones was responding to a call he had received while at

the bar, a different case would exist. As no such call occurred, Jones was not acting within the scope of his employment.

On appeal before the Seventh Circuit Court of Appeals, the court affirmed, applying the same analysis, except the court did not readily accept the district court's conclusion that Jones, while driving home following his frolic in the bar, was not in furtherance of his employer's business. *Snodgrass*, 957 F.2d at 486.

We believe *Snodgrass* articulates the proper analysis to be applied in the instant case. Absent proof that Smith was returning from a fee-paying, P & M service call, the mere fact that Smith was driving a P & M van with P & M's implicit approval at the time of the accident was insufficient to create an issue of fact. We believe that to hold otherwise would make P & M liable for Smith's negligent driving no matter when Smith drove the van. The *Snodgrass* court rejected such interpretation of the scope of employment doctrine, noting that it would "stretch[ ] the meaning of the doctrine too far." *Snodgrass*, 755 F. Supp. at 830.

*Snodgrass* also forecloses plaintiff from arguing that Smith was returning to his employment after engaging in a frolic. First, to deem the air conditioning job a frolic, plaintiff must inconsistently admit that the job was the "pursuit of an employee's personal business *** unrelated to employment." (*Pyne*, 129 Ill. 2d at 360, 543 N.E.2d at 1309 (defining frolic).) Second, like Jones in *Snodgrass*, Smith was not reasonably connected in time and space with the work in which he should be engaged. Like Jones, Smith was merely on his way home in the early morning hours after pursuing a private matter, some eight hours after finishing his normal day's work.

*Turnbow v. Hayes Freight Lines, Inc.* (1957), 15 Ill. App. 2d 57, 145 N.E.2d 377, is consistent with *Snodgrass*. In *Turnbow*, the appellate court reviewed a trial court's determination that defendant's employee was within the scope of his employment as a matter of law at the time of an automobile accident in which plaintiff was injured. The evidence showed the employee to live in Louisville, Kentucky, with the accident occurring in East St. Louis, Illinois. The employee had just finished a 350-mile trip in a tractor-trailer and had dropped his trailer off at defendant's lot. Having driven 10 hours, the employee was required by Interstate Commerce Commission rules to obtain at least eight hours of sleep. As there were no sleeping accommodations at defendant's lot, the employee headed in defendant's tractor to a nearby hotel. The accident causing injuries to plaintiff occurred on the way. In affirming the lower court's ruling that the employee was within the scope of employment as a matter of law, the court stated:

"While he had not yet received a particular assignment for the following day, he was instructed by defendant to call in to ascertain his next job. From this factual situation, it seems clear that while the particular assignment given its employee by defendant had terminated, nonetheless, he was continuing to conduct himself within a framework of I.C.C. and company rules which were as much a part of his employment as the actual trip. Louisville, Kentucky, his home, was many miles away. Before his next assignment, he would have been required to certify that he had obtained sufficient rest and otherwise fulfilled I.C.C. & Company requirements. Therefore, in a real sense, defendant continued to exercise such direction and control over their driver. Since no factual dispute existed, the question became one of law and we believe the trial judge ruled properly thereon." *Turnbow*, 15 Ill. App. 2d at 64, 145 N.E.2d at 380.

Accord *McClean v. Chicago Great Western Ry. Co.* (1954), 3 Ill. App. 2d 235, 121 N.E.2d 337 (employee in scope of employment as a matter of law where employee working abroad was required to drive company car after work to hotel for lodging); see generally, Annot., 51 A.L.R. 2d 120 (1957) (compiling cases analyzing whether employee is within scope of employment when operating employer's vehicle outside regular working hours); 7A Am. Jur. 2d *Automobiles & Highway Traffic* §697 (1980) (same).

Applying *Turnbow* to the instant case, it is clear that P & M is entitled to judgment as a matter of law. Had Smith been returning towards home from a P & M service call at the time of the accident, a different situation would exist. Again, plaintiff has presented no evidence to show that the stepdaughter job was other than a personal favor for a close relative. Accordingly, summary judgment was appropriate.

Other than plaintiff's citation of cases which stand for general propositions of law, the only authority plaintiff cites to support his position that summary judgment was improper is the following passage from *Spiotta v. Hamilton* (1970), 120 Ill. App. 2d 387, 394, 256 N.E.2d 649, 652:

"Nor was it error for the court to instruct the jury that Hamilton was an agent of the defendant Eagle Food Centers, Inc. as a matter of law. The testimony was undisputed that Hamilton would leave his home, go to his various stops, merchandise, sell and display Eagle Food Company bread and then return to his home without going to a home office to report. And he was

driving a car that was given to him by the corporate defendant. The evidence raised no question of fact for the jury to decide on the question of agency. See *Urban v. Industrial Commission,* 34 Ill. 2d 159, 161-64, 214 N.E.2d 737 (1966)."

We are not persuaded by *Spiotta.* Nowhere in the facts of the case is the reader informed what Hamilton was doing at the time of the accident. Given the court's citation of *Urban,* however, he must have been working. In *Urban,* the supreme court reinstated an arbitrator's award to a widow whose husband was killed in an automobile accident while working as a travelling salesman. The issue before the arbitrator and the court was whether, for purposes of workmen's compensation, the decedent sustained accidental injuries arising out of and in the course of his employment. The court applied the following rule:

> "Ordinarily it is held that accidents that occur while an employee is going to or from his place of employment do not arise out of and in the course of employment, [citation] but this is not true where the employee's trip is determined by the demands of his employment. [Citation.] One of the well recognized exceptions to the general rule of noncompensability involves traveling salesmen whose duties require them to travel from place to place. The decisions of this court as to traveling salesmen reveal that 'It has uniformly been held that when an employee travels for his employer and returns after working hours he remains in the course of his employment on the way to his home.' " *Urban,* 34 Ill. 2d at 161-62, 214 N.E.2d at 739, quoting *Irwin-Neisler & Co. v. Industrial Comm'n* (1931), 346 Ill. 89, 93, 178 N.E.2d 357.

Accord *Pyne,* 129 Ill. 2d at 356, 543 N.E.2d at 1307 ("exception exists for employees who are caused by their employers to travel away from a regular workplace or whose travel is at least partly for their employers' purposes rather than simply serving to convey the employees to or from a regular jobsite").

In summary, while Smith was performing "conduct" of the kind P & M employed him to perform, the conduct did not occur substantially within authorized time and space limits nor was it actuated in any way by a purpose to serve his master. (Restatement (Second) of Agency §228 (1958).) The accident occurred well after Smith had quit work for the day (some eight hours) and during Smith's return trip home from an errand which was actuated by Smith's own purpose. The lack of a purpose to serve P & M is made evident by the fact that

the trip never would have been made had the stepdaughter cancelled. As Justice Cardozo once noted:

> " '*** [I]f the journey would have gone forward though the business errand had been dropped, and would have been cancelled upon the failure of the private purpose, though the business errand was undone, the travel is then personal and personal the risk.' " (*McClean*, 3 Ill. App. 2d at 242, 121 N.E.2d at 340, quoting *Marks' Dependents v. Gray* (1929), 251 N.Y. 90, 94, 167 N.E. 181, 183.)

Justice Cardozo's comments are particularly appropriate here.

We now address plaintiff's claim that the pendency of certain discovery matters precluded the court from entering summary judgment. To place this issue in its proper light, we briefly set forth the posture this case had at the time defendant's summary judgment motion was heard.

The accident in question occurred on July 23, 1986, and plaintiff filed his complaint on September 10, 1987. On February 23, 1988, plaintiff filed a production request seeking Smith's income tax returns for the years 1986-1988. Smith objected to this request on March 15, 1989. Plaintiff brought no motion to compel disclosure.

On April 4, 1989, plaintiff filed another production request seeking: (1) documents of sale of the van in question; (2) all daily logs, time cards, and job assignments of Smith between July 7 through 24, 1986; (3) Smith's personnel file; and (4) P & M's "corporate" documents. P & M objected to this request on May 2, 1989, and no motion to compel was filed.

The case retained this discovery posture until P & M filed its summary judgment motion on May 17, 1990. Plaintiff followed with filing on June 22, 1990, a motion to compel Smith to produce the requested income tax forms and a production request duplicating his prior April 4, 1989, request.

In opposition to defendant's summary judgment motion, plaintiff's counsel, in addition to contesting the propriety of summary judgment on the merits, contended that summary judgment was premature due to pending discovery. Counsel filed an affidavit pursuant to Supreme Court Rule 191(b) (134 Ill. 2d R. 191(b)) to support her argument that summary judgment was premature. In this affidavit, counsel noted the above pending discovery matters, as well as her inability to depose Thomas Vaccaro, P & M's service manager. Plaintiff originally noticed Vaccaro for deposition in February 1989. The deposition was rescheduled on numerous times after this original notice. In July

1990, plaintiff learned from P & M's counsel that P & M no longer employed Vaccaro and that he was living in Naples, Florida.

Counsel's affidavit also recited the unavailability of a towing report regarding P & M's van. Plaintiff had requested a copy of the report from P & M by letter dated May 3, 1989. This letter reveals that plaintiff knew the name and address of the towing company. P & M never responded to the letter.

Counsel's affidavit concluded by arguing that the pendency of the above discovery matters rendered summary judgment premature. Counsel claimed that resolution of these discovery matters would impact on the scope of employment issue and are "material and indispensable" to plaintiff's case in chief and his ability to respond to defendant's motion.

■■ Supreme Court Rule 191(b) specifies the procedure to be followed where additional discovery is needed in regard to summary judgment proceedings. The rule provides:

"If the affidavit of either party contains a statement that any of the material facts which ought to appear in the affidavit are known only to persons whose affidavits affiant is unable to procure by reason of hostility or otherwise, naming the persons and showing why their affidavits cannot be procured and *what affiant believes they would testify to if sworn, with his reasons for his belief,* the court may make any order that may be just, either granting or refusing the motion, or granting a continuance to permit affidavits to be obtained, or for submitting interrogatories to or taking the depositions of any of the persons so named, or for producing papers or documents in the possession of these persons or furnishing sworn copies thereof." (Emphasis added.) (134 Ill. 2d R. 191(b).)

Failure to comply with Rule 191(b) defeats an objection on appeal that insufficient time for discovery was allowed. *Schultz v. Hennessy Industries, Inc.* (1991), 222 Ill. App. 3d 532, 584 N.E.2d 235; *Rush v. Simon & Mazian, Inc.* (1987), 159 Ill. App. 3d 1081, 513 N.E.2d 100; *Wooding v. L & J Press Corp.* (1981), 99 Ill. App. 3d 382, 425 N.E.2d 1055; *Rogers v. Robson, Masters, Ryan, Brumund & Belom* (1979), 74 Ill. App. 3d 467, 392 N.E.2d 1365, *aff'd* (1980), 81 Ill. 2d 201, 407 N.E.2d 47.

■■ We believe that the trial court did not err in granting P & M's motion for summary judgment. Plaintiff's Rule 191(b) affidavit was fatally defective. First, the affidavit was signed by plaintiff's attorney, whereas the rule requires that the affidavit be signed by the party. (*Rush,* 159 Ill. App. 3d at 1085, 513 N.E.2d at 103.) Second, the affi-

davit does not contain the necessary disclosures required under the rule. Counsel alleges in only a general sense that the above discovery matters may impact on the scope of employment issue. This is not compliance with the rule. The affidavit must state specifically what the affiant believes the prospective witness would testify to if sworn and reasons for the affiant's belief. (*Rush*, 159 Ill. App. 3d at 1085, 513 N.E.2d at 103.) The crucial fact in this case is whether the air conditioning job was indeed a favor for Smith's stepdaughter or whether it was an official P & M service call. Merely alleging that certain discovery matter may shed light on the scope of employment issue is a general assertion, not a fact. Rule 191(b) requires facts, not conclusions. *Rush*, 159 Ill. App. 3d at 1085, 513 N.E.2d at 103.

Apart from plaintiff's Rule 191(b) failure, plaintiff had ample opportunity to discover facts in opposition to defendant's motion for summary judgment. Plaintiff had nearly three years between the filing of his suit and defendant's motion for summary judgment. Plaintiff had an additional six months following the summary judgment motion to prepare his defense to defendant's dispositive motion. Given the above time frames within which plaintiff could have made appropriate discovery, we are not persuaded that the circuit court prematurely granted summary judgment against plaintiff. See *Johnson v. Matviuw* (1988), 176 Ill. App. 3d 907, 913, 531 N.E.2d 970, 974 (and cases cited therein); *Kittleson v. United Parcel Service, Inc.* (1987), 162 Ill. App. 3d 966, 516 N.E.2d 350; *Hanes v. Orr & Associates* (1977), 53 Ill. App. 3d 72, 368 N.E.2d 584.

For the foregoing reasons, the order of the circuit court of Cook County granting summary judgment to P & M is affirmed.

Affirmed.

CAMPBELL and O'CONNOR, JJ., concur.