JOHN H. CRICHTON, JR., on Behalf of Himself and All Others Similarly Situated, Plaintiff-Appellant, v. GOLDEN RULE INSURANCE COMPANY, Defendant (Federation of American Consumers and Travelers, Defendant-Appellee).

Fifth District    No. 5—03—0637

Opinion filed June 13, 2005.

Daniel E. Bacine, Sheldon L. Albert, and Leslie Bornstein Molder, all of Barrack, Rodos & Bacine, of Philadelphia, Pennsylvania, Myron M. Cherry and Daniel J. Becka, both of Chicago, Bradley M. Lakin and Thomas M. Maag, both of Lakin Law Firm, of Wood River, and Jason Adkins and John Zavez, both of Adkins, Kelston & Zavez, P.C., of Boston, Massachusetts, for appellant.

William J. Knapp and Elizabeth A. Bradley, both of Knapp, Ohl & Green, of Edwardsville, for appellee.

JUSTICE HOPKINS delivered the opinion of the court:

The plaintiff, John H. Crichton, Jr., on behalf of himself and all others similarly situated, appeals the circuit court's order entering a summary judgment in favor of defendant Federation of American Consumers and Travelers (FACT) on the plaintiff's Illinois Consumer Fraud and Deceptive Business Practices Act (Act) (815 ILCS 505/1 *et seq.* (West 2002)) and breach of fiduciary duty claims. On appeal, the plaintiff also argues that the circuit court erred in refusing to permit him to acquire from FACT additional discovery pursuant to Supreme Court Rule 191(b) (145 Ill. 2d R. 191(b)). Defendant Golden Rule Insurance Company (Golden Rule) is not a party to this appeal. We affirm.

## FACTS

On January 30, 2002, the plaintiff filed his complaint against Golden Rule, alleging that Golden Rule had violated the Act because, contrary to the principle underlying group insurance, Golden Rule periodically discontinued the marketing to and enrollment of eligible individuals, a practice called "closing a block" of insurance, which increased its insurance renewal premiums.

On November 13, 2002, the plaintiff filed a motion for leave to file a first amended complaint to add FACT as a defendant. On November 21, 2002, the court granted the plaintiff's motion. On December 9, 2002, the plaintiff filed an amended complaint against FACT for violating the Act and for breaching its fiduciary duty in connection with the marketing and sale of Golden Rule's health insurance. The plaintiff alleged that, as a member of FACT, he held an insurance certificate is-

sued by Golden Rule. The plaintiff alleged that Golden Rule and FACT falsely marketed the health insurance as group insurance despite Golden Rule's practice of closing blocks of insurance and causing the insurance to become increasingly expensive. The plaintiff alleged that Golden Rule and FACT concealed from the plaintiff and members of the class the rate consequences of Golden Rule's routine practice of closing blocks of insurance and replacing low, new-issue premium rates with much higher, permanent premium rates. The plaintiff also alleged that FACT owed a fiduciary duty to its members who purchased Golden Rule health insurance pursuant to the master insurance policies issued to FACT by Golden Rule and that FACT breached its fiduciary duty by participating in the deceptive marketing practices.

On February 14, 2003, Golden Rule filed its answer to the plaintiff's amended complaint. Golden Rule admitted, among other things, that (1) purchasers of its association group health insurance were required to become members of FACT to purchase the insurance, (2) one of the benefits FACT provided to its members was access to health insurance underwritten by Golden Rule that was marketed as group insurance, (3) FACT's website contained a link to Golden Rule's website and informed viewers that they could learn more about the health insurance plans available to FACT members by connecting to Golden Rule's website, and (4) since the early 1990s, Golden Rule notified FACT when it implemented a standard premium rate increase on a FACT master group policy.

In its answer, Golden Rule also admitted that it did not actively market a given association group health insurance policy to additional, eligible FACT members and that it periodically discontinued the marketing to and enrollment of otherwise eligible individuals in an existing pool of association group health insurance, a practice sometimes referred to as "closing a block" of insurance. Golden Rule admitted that when an insurer of medically underwritten coverage closes a block of insurance, the anticipated health status of the existing pool of insureds erodes due to, *inter alia,* the effects of natural aging and the attrition of members of the pool and that, therefore, as the insureds in a closed block aged, the premiums increased. Golden Rule admitted that the renewal rates for its association group health insurance were typically higher than the initial rates.

In its answer, Golden Rule asserted, as an affirmative defense, that the plaintiff's claim was barred by the statute of limitations and/or the doctrine of *laches* (see 815 ILCS 505/10a(e) (West 2002)) because the plaintiff's premiums with Golden Rule first increased in

October 1996 but the plaintiff failed to file his complaint until February 14, 2002.[1]

On June 24, 2003, FACT filed its motion for a summary judgment, together with attachments and exhibits. FACT attached to its motion for a summary judgment literature indicating as follows: "[FACT] is a not-for-profit association, formed in 1984 to help the value-conscious consumer receive information and benefits which he or she might find difficult (if not impossible!) to obtain alone." FACT attached documents from its website, which stated that FACT is "supported *solely* by member dues" (emphasis in original) of $3 per month, that FACT "does NOT accept commissions or compensation of any kind for recommending any product, service[,] or other benefit," and that FACT "provides an ever-improving menu of benefits, discounts, information[,] and resources for its members," including the opportunity to utilize various services and plans, such as continuing education scholarships, travel services and discounts, consumer information, disaster relief, and health insurance.

FACT's website also stated as follows:

"Skyrocketing health care costs have made it essential for almost all of us to own a solid medical plan, underwritten by a reputable carrier. ***

If you want to know more about the Health Insurance Plans available to FACT members, you may link directly to *Golden Rule Insurance Company.*"

FACT also attached to its motion for a summary judgment the affidavit of Vicki Rolens, FACT's managing director since 1999, which stated, in pertinent part, as follows:

"3. FACT is a small, not-for-profit association ***. It was formed in 1984, primarily for the purpose of providing travel services and various buying advantages, approximately six years before it began offering its members the opportunity to obtain association group health insurance from Golden Rule ***. ***

4. FACT is not an insurer, and none of its directors or administrators have any actuarial training or experience. In addition, none of its directors or administrators have ever worked for an insurance company or been educated in any matters relating to the business of providing health insurance[.]

5. To facilitate Golden Rule's provision of association group health insurance to FACT members, FACT entered into a number of 'group master policies' with Golden Rule, pursuant to which eligible individuals—i.e., certain FACT members—may purchase a certificate of insurance from Golden Rule. Golden Rule periodically

---

[1]The complaint was actually filed on January 30, 2002.

sends correspondence to FACT apprising the association that it intends to implement a rate increase on one or more of the master policies between Golden Rule and FACT. Golden Rule *** notifies FACT of certain premium increases that will apply across-the-board to insureds who hold certificates issued pursuant to a particular FACT master policy.

6. Golden Rule does not provide FACT with any information concerning the manner in which, or methodology by which, Golden Rule determines its premium increases. Thus, FACT has no knowledge regarding Golden Rule's practices or methods for calculating renewal premiums. Moreover, FACT has no knowledge of, or control over, Golden Rule's decision-making process regarding when to 'close' a block of insurance. ***

7. Before being joined in this action, FACT complied with a subpoena from plaintiff by producing to counsel for plaintiff *** and Golden Rule *** all of the documents in its possession, custody[,] and control that are relevant to its arrangement with Golden Rule. I am not aware of any other relevant documents in the possession of FACT."

FACT also attached to its motion for a summary judgment the May 29, 1990, agreement between Golden Rule and FACT, which provided, in pertinent part, as follows:

"WHEREAS, [Golden Rule] would like to market health and life insurance products to present and future members of [FACT]; and

WHEREAS, [FACT] would like its members to be eligible for life and health insurance on a group basis through the association;

*** [Golden Rule and FACT] agree to the following terms and conditions.
***

2. Life and health insurance products marketed to members of [FACT] *** must have the prior written approval of the Insurance Advisory Board of [FACT]. ***

* * *

8. For those persons who are insured under a [FACT] Plan, [Golden Rule] will act as a conduit for [FACT] applications and will allow payment of [FACT] dues along with the insurance premium.

* * *

11. [FACT] will receive no compensation from [Golden Rule].

* * *

24. Nothing contained herein shall be construed to create the relation of employer and employee between [Golden Rule] and [FACT]. It is agreed and acknowledged between the parties that neither [FACT] nor [Golden Rule] is a partner of or joint venturer with the other and each retains its independent status in the performance of this Agreement."

FACT also attached to its motion for a summary judgment the affidavit of Richard Sullivan, manager of Golden Rule's health products filings department, which stated, in pertinent part, as follows:

"5. FACT members pay a monthly fee for access to FACT's information and benefits. One benefit provided to FACT members is the opportunity to apply for association group health insurance with Golden Rule.

6. In order to obtain association group health insurance from Golden Rule, a FACT member must apply directly to Golden Rule for coverage, receive Golden Rule approval, and pay Golden Rule directly for the coverage. FACT merely provides the member an opportunity to receive coverage from Golden Rule by holding a 'master policy.' Thus, while being a FACT member is a necessary precursor to obtaining Golden Rule insurance through FACT's master policy, not all of FACT's members purchase health insurance from Golden Rule. Those who do receive an insurance 'certificate,' which evidences the binding contract between the insured and Golden Rule entitling the insured to coverage.

\* \* \*

9. None of Golden Rule's health insurance applications are ever sent to FACT, and FACT has no authority over, or input into, the approval of applications or the implementation of members' health insurance benefits. All payments for the health insurance are sent directly to Golden Rule \*\*\*."

The FACT membership brochure, also attached to FACT's motion for a summary judgment, stated in part as follows:

"Spiraling health care costs have made a solid medical plan, underwritten by a reputable carrier, absolutely essential to almost all of us.

The carrier who currently furnishes insurance for FACT members is Golden Rule \*\*\*, whose history of service and reliability have earned the recommendation of FACT's Insurance Advisory Board.

*PLEASE NOTE: FACT is not an insurance agency or company. We do not market insurance, and under no circumstances do we receive commissions or other compensation of any kind for recommending a carrier or a plan of insurance to you.*

### HOW TO USE THIS BENEFIT

• Call [FACT] and tell us that you are interested in a medical insurance quote." (Emphasis in original.)

On August 12, 2003, the plaintiff filed his memorandum in opposition to FACT's motion for a summary judgment, along with the af-

fidavit of the plaintiff's attorney and attached exhibits. In his affidavit, submitted pursuant to Supreme Court Rule 191(b) (145 Ill. 2d R. 191(b)), the plaintiff's attorney stated that on April 22, 2002, he caused a subpoena *duces tecum* to be served on FACT and that, although not a party to the action at that time, FACT responded to the subpoena by producing documents in its possession on July 2002. The plaintiff's attorney attested that the plaintiff nevertheless could not adequately respond to FACT's motion for a summary judgment without additional discovery. He requested documents and testimony from named individuals relating to FACT's insurance advisory board (the members of which were unnamed) to respond to FACT's contention that it had little knowledge of the health insurance business; depositions of named individuals acting on FACT's behalf, who had accepted the premium increases imposed on FACT members, to show that FACT was intimately aware of the reasons for and the mechanics of the increases Golden Rule imposed; and additional testimony from various named individuals about FACT's relationship with Golden Rule, including negotiations between FACT and Golden Rule relating to the terms of the master policy, insurance certificates, and premium increases.

On September 8, 2003, FACT filed its reply brief in support of its motion for a summary judgment. On September 12, 2003, the circuit court granted FACT's motion for a summary judgment and dismissed the portions of the plaintiff's complaint that were directed to FACT. On October 1, 2003, the circuit court entered its order, pursuant to Supreme Court Rule 304(a) (155 Ill. 2d R. 304(a)), finding no just reason for delaying the appeal. On October 6, 2003, the plaintiff filed his timely notice of appeal.

## ANALYSIS

A summary judgment is proper where the pleadings, depositions, and admissions on file, together with the affidavits, if any, reveal that there is no genuine issue on any material fact and that the moving party is entitled to a judgment as a matter of law. 735 ILCS 5/2—1005(c) (West 2002); *Shannon v. Boise Cascade Corp.*, 208 Ill. 2d 517, 523-24 (2004). In ruling on a motion for a summary judgment, the court must construe the pleadings, depositions, and affidavits in the light most favorable to the nonmoving party. *Emerson Electric Co. v. Aetna Casualty & Surety Co.*, 281 Ill. App. 3d 1080, 1083 (1996); *Kellerman v. Mar-Rue Realty & Builders, Inc.*, 132 Ill. App. 3d 300, 305 (1985).

A defendant may, at any time, move, with or without supporting affidavits, for a summary judgment in his favor. 735 ILCS 5/2—1005(b)

(West 2002). If the party moving for a summary judgment provides evidentiary facts that, if uncontradicted, entitle him to a judgment, the opposing party cannot rely on his pleadings alone to raise issues of material fact. *Kellerman*, 132 Ill. App. 3d at 305. If the opponent fails to file counteraffidavits, the statements in the moving party's affidavits stand as admitted, and the opponent risks the entry of a summary judgment. *Rohe v. Shivde*, 203 Ill. App. 3d 181, 192 (1990); *Diggs v. Suburban Medical Center*, 191 Ill. App. 3d 828, 833 (1989); *Johnson v. Matviuw*, 176 Ill. App. 3d 907, 913 (1988); *Kellerman*, 132 Ill. App. 3d at 306. We review *de novo* a trial court's order granting a summary judgment. *Shannon*, 208 Ill. 2d at 524.

### Consumer Fraud and Deceptive Business Practices Act

■ The Act is a regulatory and remedial statute intended to protect consumers, borrowers, and business persons against fraud, unfair methods of competition, and other unfair and deceptive business practices. *Robinson v. Toyota Motor Credit Corp.*, 201 Ill. 2d 403, 416-17 (2002). The Act is intended to provide broader consumer protection than a common law fraud action. *Kellerman*, 132 Ill. App. 3d at 306. The defendant's good or bad faith is irrelevant under the Act; consequently, a plaintiff can recover for even innocent misrepresentations. *Munjal v. Baird & Warner, Inc.*, 138 Ill. App. 3d 172, 182-83 (1985). "However, the Act is not intended to be used as a vehicle for transforming nondeceptive and nonfraudulent statements or omissions into actionable ones." *Kellerman*, 132 Ill. App. 3d at 306.

■ The elements of a claim under the Act are these: (1) a deceptive act or practice by the defendant, (2) the defendant's intent that the plaintiff rely on the deception, and (3) the occurrence of the deception during a course of conduct involving trade or commerce. 815 ILCS 505/2 (West 2002); *Robinson*, 201 Ill. 2d at 417; *Connick v. Suzuki Motor Co.*, 174 Ill. 2d 482, 501 (1996). Section 2 of the Act provides as follows: "[U]nfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, [or] misrepresentation or the concealment, suppression[,] or omission of any material fact, with intent that others rely upon the concealment, suppression[,] or omission of such material fact, or the use or employment of any practice described in Section 2 of the 'Uniform Deceptive Trade Practices Act' *** in the conduct of any trade or commerce are *** unlawful whether any person has in fact been misled, deceived[,] or damaged thereby." 815 ILCS 505/2 (West 2002). Section 2 of the Uniform Deceptive Trade Practices Act states that a person engages in a deceptive trade practice when, in the course of his business, vocation, or occupation, he "represents that

goods or services have \*\*\* benefits \*\*\* that they do not have." 815 ILCS 510/2(a)(5) (West 2002).

A plaintiff may recover for unfair as well as deceptive conduct. *Robinson*, 201 Ill. 2d at 417; *Saunders v. Michigan Avenue National Bank*, 278 Ill. App. 3d 307, 313 (1996). To determine whether a given course of conduct or act is unfair, we consider "(1) whether the practice offends public policy; (2) whether it is immoral, unethical, oppressive, or unscrupulous; [and] (3) whether it causes substantial injury to consumers. [Citation.]" *Robinson*, 201 Ill. 2d at 417-18. Generally, charging an unconscionably high price is insufficient to establish an unfairness claim. *Saunders*, 278 Ill. App. 3d at 313. The defendant's conduct must violate public policy, be so oppressive that it leaves the consumer with little alternative except to submit to it, and injure the consumer. *Saunders*, 278 Ill. App. 3d at 313.

The plaintiff argues that FACT engaged in the deceptive marketing and sale of health insurance by falsely marketing the health insurance as group insurance despite Golden Rule's practice of closing blocks of insurance and causing the insurance to become increasingly expensive. The plaintiff fails to recite a representation by FACT that the health insurance Golden Rule issued was group health insurance. The information found on FACT's website and in its benefits brochure, attached to FACT's motion for a summary judgment, did not characterize the insurance Golden Rule provided as *group* health insurance. Instead, to support his argument, the plaintiff notes that FACT directed potential members to the Golden Rule website, which characterized the insurance as group insurance, and the plaintiff cites language from the Golden Rule insurance certificates, which Golden Rule issued to FACT members and which characterized the insurance as group policies. However, the information Golden Rule provided to its insureds regarding its health insurance does not support the plaintiff's claim against FACT. See *Connick*, 174 Ill. 2d at 501 (the complaint was insufficient to state a claim for statutory consumer fraud against a company based on statements of local dealers because the complaint did not adequately plead an agency between the company and local dealers); *Pinski v. Adelman*, 955 F. Supp. 73, 74 (N.D. Ill. 1996) (the insurer was not responsible for the broker's representations of which it was unaware and which it did not ratify). The plaintiff failed to present a genuine issue of material fact to support his allegation that FACT misrepresented the health insurance product that the plaintiff purchased from Golden Rule.

The plaintiff also alleges that Golden Rule and FACT engaged in the deceptive marketing and sale of health insurance by concealing from potential customers that the initial premiums were discount

rates that would be replaced by significantly higher renewal premiums, due to Golden Rule's policy of closing blocks of insurance.

Because the plaintiff failed to file counteraffidavits, the statements in FACT's affidavits stand as admitted. See *Rohe*, 203 Ill. App. 3d at 192; *Diggs*, 191 Ill. App. 3d at 833; *Johnson*, 176 Ill. App. 3d at 913; *Kellerman*, 132 Ill. App. 3d at 306. In his affidavit, Richard Sullivan, manager of Golden Rule's health products filings department, stated that the FACT member applied directly to Golden Rule for coverage, received Golden Rule approval, and paid Golden Rule directly for the coverage. Richard stated that none of Golden Rule's health insurance applications was ever sent to FACT and that FACT had no authority over or input into the approval of applications or the implementation of members' health insurance benefits. In her affidavit, Vicki Rolens, FACT's managing director, stated that FACT was not an insurer and that FACT had no knowledge or control over Golden Rule's decisionmaking process regarding premium increases or when to close a block of insurance. FACT cannot be held liable under the Act for Golden Rule's allegedly deceptive or unfair practices, which FACT did not know about and did not ratify. See *Pinski*, 955 F. Supp. at 74.

The plaintiff cites FACT's statement that it was formed to "help the value-conscious consumer receive information and benefits which he or she might find difficult (if not impossible!) to obtain alone." The plaintiff argues that FACT misrepresented Golden Rule's insurance as a "benefit." The plaintiff also alleges that FACT's representations about its insurance advisory board, *i.e.*, that Golden Rule's history of service and reliability earned the recommendation of FACT's insurance advisory board, were false and misleading in violation of the Act.

The plaintiff's allegations do not describe deceptive or unfair conduct. FACT offered various buying benefits to the consumer, including travel services, continuing education scholarships, travel services and discounts, consumer information, disaster relief, and health insurance. Although Golden Rule allegedly improperly increased its premiums, FACT's characterization of Golden Rule's health insurance as a benefit is not unfair or deceptive. Further, FACT's statement that Golden Rule earned the recommendation of FACT's insurance advisory board is not deceptive, especially in light of Vicki Rolens' uncontradicted affidavit that FACT had no knowledge of Golden Rule's practice of closing blocks of insurance to escalate its prices for health insurance premiums. See *Connick v. Suzuki Motor Co.*, 275 Ill. App. 3d 705, 723 (1995) (mere subjective descriptions or opinions do not qualify as fraudulent misrepresentations of fact), *aff'd in part & rev'd in part on other grounds*, 174 Ill. 2d 482 (1996). The Act may not be used as a

vehicle for transforming nondeceptive and nonfraudulent statements or omissions into actionable ones. See *Kellerman*, 132 Ill. App. 3d at 306.

The plaintiff also argues that FACT engaged in unfair acts or practices by entering into master insurance policies on behalf of its members and allowing Golden Rule to close the block of insureds after one year. Because the plaintiff raises this theory for the first time on appeal, this argument is waived. See *Shannon*, 208 Ill. 2d at 527 (parties to an appeal must adhere to the theory presented to the trial court, and that theory must be treated as the law of the case on appeal); *Beverly Bank v. Alsip Bank*, 106 Ill. App. 3d 1012, 1016 (1982) (a party may not argue one theory to the trial court and another to the appellate court); *Schuman v. Pekin House Restaurant & Lounge*, 102 Ill. App. 3d 532, 535 (1981) (an issue not presented to or considered by the trial court cannot be raised for the first time on review, even on appeal from a summary judgment).

The plaintiff also argues that the circuit court erred in granting a summary judgment in favor of FACT because FACT and Golden Rule were joint venturers, *i.e.*, that FACT participated in the sale and marketing of Golden Rule's insurance products as a joint venturer with Golden Rule and is liable for Golden Rule's misrepresentations. To maintain a cause of action based on a theory of vicarious liability based on a joint venture, the plaintiff must allege the following: (1) a community of interest in the purpose of the joint venture, (2) a right to direct and govern the policy and conduct of the other joint venturer, and (3) a right to joint control of the property used in the joint venture. *Behr v. Club Med, Inc.*, 190 Ill. App. 3d 396, 409 (1989). Because in his complaint the plaintiff failed to allege the elements of a joint venture and thus failed to inform FACT that his claim was in the nature of vicarious liability predicated on a theory of a joint venture with Golden Rule, the circuit court properly awarded a summary judgment. See *Behr*, 190 Ill. App. 3d at 409-10.

### Breach of Fiduciary Duty

■ The plaintiff argues that the circuit court erred in granting a summary judgment in favor of FACT on his breach of fiduciary duty claim. The plaintiff cites language from the insurance certificate Golden Rule issued to the FACT members, which stated, "[FACT] will act on behalf of all members in all matters pertaining to the policy, and every[ ] (A) act done by [FACT][ ] or (B) agreement between [Golden Rule] and [FACT][ ] will be binding on the members." The plaintiff argues that by agreeing to exercise its judgment on behalf of its members and by promoting its insurance advisory board, FACT

placed itself in a fiduciary relationship with its members with regard to the Golden Rule insurance issued to FACT members. We disagree.

To recover for breach of a fiduciary duty, a plaintiff must prove that a fiduciary duty exists, that the fiduciary duty was breached, and that the breach proximately caused the injury of which the plaintiff complains. *Prime Leasing, Inc. v. Kendig*, 332 Ill. App. 3d 300, 313 (2002). A fiduciary duty arises either as a matter of law or by meeting a "special circumstances" test. *Ransom v. A.B. Dick Co.*, 289 Ill. App. 3d 663, 672 (1997). Particular relationships, such as attorney-client and principal-agent, constitute fiduciary relationships as a matter of law. *Ransom*, 289 Ill. App. 3d at 672. A fiduciary relationship might also arise as a result of the special circumstances of the parties' relationship, where one party places trust in another so that the latter gains superiority and influence over the former. *Ransom*, 289 Ill. App. 3d at 672. The plaintiff concedes that his relationship with FACT did not give rise to a fiduciary duty as a matter of law.

The relevant factors to determine whether a fiduciary relationship existed based on "special circumstances" include the degree of kinship between the parties, the disparity in age, health, mental condition, education, and business experience between the parties, and the extent to which the servient party entrusted his business affairs to the dominant party and placed trust and confidence in it. *Prime Leasing, Inc.*, 332 Ill. App. 3d at 314; *Ransom*, 289 Ill. App. 3d at 673; *Zeilenga v. Stelle Industries, Inc.*, 52 Ill. App. 3d 753, 757 (1977). "[T]he mere fact that business transactions occurred or that a contractual relationship existed is insufficient to warrant finding a fiduciary relationship. [Citation.]" *R.J. Management Co. v. SRLB Development Corp.*, 346 Ill. App. 3d 957, 968 (2004).

FACT correctly argues on appeal that the plaintiff failed to allege and failed to demonstrate during the summary judgment proceedings that special circumstances between the plaintiff and FACT created a fiduciary relationship between them. The plaintiff did not allege a degree of kinship or a disparity in age, health, mental condition, education, or business experience between the parties that would support a finding of a fiduciary relationship. See *Gonzalzles v. American Express Credit Corp.*, 315 Ill. App. 3d 199, 210 (2000) (the plaintiff's allegations were insufficient to suggest that special circumstances created a fiduciary relationship because the plaintiff did not allege a degree of kinship between the parties or a disparity in age, health, or mental condition).

Further, the plaintiff failed to counter FACT's affidavits demonstrating that the plaintiff did not entrust to FACT his business affairs with regard to his health insurance or place trust and confidence in it.

See *Prime Leasing, Inc.*, 332 Ill. App. 3d at 313. In his affidavit, Richard Sullivan, manager of Golden Rule's health products filings department, stated that to obtain association group health insurance from Golden Rule, a FACT member applied directly to Golden Rule for coverage, received Golden Rule approval, and paid Golden Rule directly for the coverage. Richard stated that FACT merely provided the member an opportunity to receive coverage from Golden Rule by holding a master policy. Richard stated that none of Golden Rule's health insurance applications was sent to FACT, that FACT had no authority over or input into the approval of applications or the implementation of members' health insurance benefits, and that all health insurance payments were sent directly to Golden Rule.

The plaintiff concedes that FACT did not owe its members a fiduciary duty as a matter of law, the plaintiff failed to allege the degree of kinship between the parties or the disparity in age, health, mental condition, education, and business experience that would support a finding of a fiduciary relationship, and the plaintiff failed to counter FACT's affidavits demonstrating the lack of special circumstances. Accordingly, the circuit court properly granted FACT's summary judgment motion with regard to the plaintiff's breach of fiduciary duty claim against FACT.

### Discovery

■ The plaintiff argues that the circuit court erred in denying his motion for additional discovery pursuant to Supreme Court Rule 191(b) (145 Ill. 2d R. 191(b)), which specifies the procedure to be followed where additional discovery is needed in regard to summary judgment proceedings. FACT counters that the plaintiff had ample opportunity to take discovery before the summary judgment was entered, that there was no outstanding discovery in the case when the summary judgment was entered, and that the plaintiff's affidavit requesting additional discovery pursuant to Rule 191(b) was deficient and failed to offer any credible reason to delay a ruling on FACT's motion for a summary judgment.

A trial court is afforded great latitude in ruling on matters of discovery. *Atlantic Mutual Insurance Co. v. American Academy of Orthopaedic Surgeons*, 315 Ill. App. 3d 552, 567 (2000). We will not disturb a trial court's ruling on discovery matters unless it abuses its discretion. *Ragan v. Columbia Mutual Insurance Co.*, 183 Ill. 2d 342, 352 (1998); *Atlantic Mutual Insurance Co.*, 315 Ill. App. 3d at 567. The trial court abuses its discretion only where its ruling is arbitrary, fanciful, or unreasonable or where no reasonable person would take the view adopted by the trial court. *People v. Hall*, 195 Ill. 2d 1, 20 (2000).

The plaintiff's failure to comply with Rule 191(b) defeats his objection on appeal that the trial court allowed insufficient time for discovery. *Wynne v. Loyola University of Chicago*, 318 Ill. App. 3d 443, 456 (2000); *Giannoble v. P&M Heating & Air Conditioning, Inc.*, 233 Ill. App. 3d 1051, 1064 (1992).

Rule 191(b) provides as follows:

> "If the affidavit of either party contains a statement that any of the material facts which ought to appear in the affidavit are known only to persons whose affidavits affiant is unable to procure by reason of hostility or otherwise, naming the persons and showing why their affidavits cannot be procured and what affiant believes they would testify to if sworn, with his reasons for his belief, the court may make any order that may be just \*\*\*." 145 Ill. 2d R. 191(b).

In the present case, in his Rule 191(b) affidavit, the plaintiff's attorney requested documents and testimony of named individuals relating to FACT's insurance advisory board (the members of which were unnamed) to respond to FACT's contention that it had little knowledge of matters relating to the health insurance business. The plaintiff's attorney also sought depositions of named individuals acting on FACT's behalf, who accepted the premium increases imposed on FACT members, to show that FACT was intimately aware of the reasons for and the mechanics of the increases Golden Rule imposed. The plaintiff's attorney also sought additional testimony from various named individuals to testify about FACT's relationship with Golden Rule, including negotiations between FACT and Golden Rule, relating to the terms of the master policy, insurance certificates, and premium increases.

The plaintiff's Rule 191(b) affidavit was deficient. The plaintiff's affidavit was exclusively signed by the plaintiff's attorney, whereas the rule requires that the affidavit be signed by a party. 145 Ill. 2d R. 191(b); *Giannoble*, 233 Ill. App. 3d at 1064 (the Rule 191(b) affidavit was fatally defective because it was signed by the plaintiff's attorney, not by the party); *Rush v. Simon & Mazian, Inc.*, 159 Ill. App. 3d 1081, 1085 (1987) (the Rule 191(b) affidavit should have been filed by the party, not by the party's attorney). In addition, the plaintiff's attorney failed to state in his affidavit that the material facts were known only to persons whose affidavits the affiant was unable to procure. See *Wynne*, 318 Ill. App. 3d at 456 (the Rule 191(b) motion was fatally defective because the plaintiff did not allege that the witnesses were the "only" persons with knowledge of the material facts and alleged merely in a general sense that the witnesses had information relevant to the claim). In his Rule 191(b) affidavit, the plaintiff's

attorney also failed to state specifically what the affiant believed the prospective witnesses would testify to if sworn and the reasons for the affiant's belief. See *Giannoble*, 233 Ill. App. 3d at 1065 (general assertions are insufficient to comply with Rule 191(b)); *Rush*, 159 Ill. App. 3d at 1085 (the statement that potential witnesses had knowledge of the condition was a conclusion and was insufficient to comply with Rule 191(b), which requires facts, not conclusions). The plaintiff's failure to comply with Rule 191(b) defeats his objection on appeal that the circuit court allowed insufficient time for discovery. See *Wynne*, 318 Ill. App. 3d at 456; *Giannoble*, 233 Ill. App. 3d at 1064.

The plaintiff argues that he should not be required to comply with Rule 191(b) because FACT filed a premature *Celotex*-type motion (*Celotex Corp. v. Catrett*, 477 U.S. 317, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986)). See *Wynne*, 318 Ill. App. 3d at 456 (a plaintiff is not required to comply with Rule 191(b) when a defendant files a premature *Celotex*-type motion); 4 R. Michael, Illinois Practice § 39.4, at 255 (1989) (Civil Procedure Before Trial) (a plaintiff should not be required to comply with Rule 191(b) when a defendant files a *Celotex*-type motion).

In *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 91 L. Ed. 2d 265, 273, 106 S. Ct. 2548, 2552 (1986), the Court held that a nonmoving party must be given adequate time for discovery before a court grants a motion for a summary judgment that is filed without supporting affidavits and that merely alleges the absence of evidence to support the nonmoving party's case. See also *Williams v. Covenant Medical Center*, 316 Ill. App. 3d 682, 692 (2000) (the defendant made a *Celotex*-type motion for a summary judgment, which asserted without an affidavit that the plaintiffs had no expert testimony to establish that the defendant's negligence was the proximate cause of the plaintiff's injury).

In *Hutchcraft v. Independent Mechanical Industries, Inc.*, 312 Ill. App. 3d 351, 355 (2000), the court distinguished the two types of summary judgment motions: (1) a *Celotex*-type motion, in which the defendant points out the absence of evidence supporting the plaintiff's position, and (2) a motion affirmatively showing that some element of the case must be resolved in the defendant's favor, requiring the defendant to prove something that it would not be required to prove at a trial.

The plaintiff mischaracterizes FACT's motion for a summary judgment as a *Celotex*-type motion. See *Hutchcraft*, 312 Ill. App. 3d at 355. In its motion for a summary judgment, FACT did not allege merely that the plaintiff could not produce evidence to support his case. Instead, FACT demonstrated, through its attached affidavits, that it

was entitled to a judgment because it was unaware and did not control Golden Rule's policy of closing blocks of insurance, because it never misrepresented Golden Rule's health insurance as group insurance, and because Golden Rule and the plaintiff had entered into an arm's-length transaction for health insurance that created no special circumstances between the plaintiff and FACT that would support a breach of fiduciary duty claim against FACT. Because FACT's motion for a summary judgment was not a *Celotex*-type motion, the plaintiff was required to comply with Rule 191(b). See 145 Ill. 2d R. 191(b). Because the plaintiff failed to do so, the circuit court properly denied the plaintiff's request for additional discovery.

Because we hold that the plaintiff failed to counter FACT's motion for a summary judgment and attach affidavits with evidence that created a genuine issue of material fact with regard to his statutory consumer fraud claim or his breach of fiduciary duty claim, the plaintiff's claims fail, and we need not address the statute of limitations issue.

## CONCLUSION

For the foregoing reasons, the judgment of the circuit court of Madison County is affirmed.

Affirmed.

KUEHN and CHAPMAN, JJ., concur.