In the

# United States Court of Appeals
## For the Seventh Circuit

No. 05-4544

AUTOTECH TECHNOLOGY LIMITED PARTNERSHIP,
an Illinois limited partnership,

*Plaintiff-Appellant,*

*v.*

AUTOMATIONDIRECT.COM, KOYO ELECTRONICS
INDUSTRIES COMPANY LIMITED, and
TIMOTHY HOHMANN,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 05 C 5488—**James F. Holderman**, *Chief Judge.*

ARGUED OCTOBER 20, 2006—DECIDED DECEMBER 11, 2006

Before EASTERBROOK, *Chief Judge*, and BAUER and
EVANS, *Circuit Judges.*

BAUER, *Circuit Judge.* Autotech Technology Limited
Partnership ("Autotech") and Automationdirect.com
("ADC") entered into a contract to develop and market
touch screens. When ADC developed a competing touch
screen, Autotech sought a preliminary injunction to
restrain ADC from selling the new product, claiming
breach of fiduciary duties. At the preliminary injunc-
tion hearing, the district court barred Autotech's expert
and denied Autotech relief finding that there was no

evidence to demonstrate a likelihood of success on the merits because fiduciary duties were not created and therefore not breached. We affirm.

## I.  Background

Autotech and ADC are two companies involved in the touch screen industry. Autotech manufactures computer equipment, while ADC is a direct marketer that sells automation control products through e-commerce and catalogs. On September 8, 1999, ADC and Autotech entered into a contract for joint development and sale of a product that would later be known as the "EZTouch touch screen." They also signed a document entitled, "This Marriage and Signing of a $100 Million Contract." Non-lawyer employees at ADC and Autotech drafted both documents; there were no lawyers involved. This usually sets the stage for a lovely lawsuit.

By terms of the contract, Autotech agreed to manufacture and ship products to ADC, and ADC agreed to market them. Each party contributed $150,000 to a joint investment account as an initial co-investment. The parties were to "mutually agree upon the dispersion of funds." Both parties agreed that this was not a "simple legal relationship." Instead, the contract was to "more strongly define a deeper sense of commitment to the long-term success of all partners in the relationship." Peppered throughout the contract was language describing the parties as "partners." However, the contract also provided that neither party had the right or responsibility "to assume or to create any obligations or responsibilities expressed or implied on behalf of or in the name of the other or to bind the other party in any manner whatsoever." Also, neither party was prohibited from developing competing products. The contract had an initial term of

five and a half years and was automatically renewed for one-year terms unless notice was given.

Without informing Autotech, ADC began to develop a new product known as "C-More" with a different manufacturer, Koyo Electronics, Industries Company, Limited. ADC planned to introduce the new product after the contract expired in January 2005. In June 2004, ADC gave timely notice of nonrenewal to Autotech.

On September 15, 2005, Autotech sued ADC, its CEO Timothy Hohmann, and its majority stockholder, Koyo Electronics Industries Company, Limited, in Illinois State Court. ADC then removed the case to federal court based on diversity jurisdiction. On October 26, 2005, Autotech filed a first amended complaint asserting claims for injunctive relief, breach of contract, breach of fiduciary duty, aiding and abetting the breach of fiduciary duty, fraudulent misrepresentation, and declaratory judgment.

On September 29, 2005, Autotech filed a motion for a preliminary injunction seeking to restrain ADC from selling the C-More product, claiming breach of fiduciary duties. At the preliminary injunction hearing, Autotech contended that C-More was a clone of EZTouch that ADC developed based on proprietary information that ADC obtained from Autotech. Autotech pointed to the similarity of the display of the computer icons on C-More when compared to EZTouch. Peter M. Martin testified as Autotech's expert witness in support of this position. The district court excluded his testimony, finding that Martin's principles and methods were unreliable because the extent of his knowledge about C-More came from an advertisement created by ADC for the general public. At the conclusion of Autotech's case-in-chief, ADC moved for judgment as a matter of law. The district court granted this motion and denied Autotech's motion for a preliminary

injunction. The district court found that there was no partnership or joint venture to support a fiduciary relationship because the parties had no right or ability to create liabilities with third persons. The district court also found that there was no fiduciary relationship created by special circumstances. Autotech timely filed this appeal.

## II. Discussion

### A. Preliminary Injunction

We review the denial of a preliminary injunction for an abuse of discretion. *Goodman v. Ill. Dep't of Fin. & Prof'l Regulation*, 430 F.3d 432, 437 (7th Cir. 2005). Under Illinois law, to establish a claim for breach of fiduciary duty, Autotech must prove the existence of a fiduciary duty, breach of that duty, and damages proximately resulting from that breach. *Neade v. Portes*, 193 Ill. 2d 433, 739 N.E.2d 496, 502, 250 Ill. Dec. 733 (Ill. 2000). A fiduciary duty arises either as a matter of law or by special circumstances. *Crichton v. Golden Rule Ins. Co.*, 358 Ill. App. 3d 1137, 832 N.E.2d 843, 854, 295 Ill. Dec. 393 (Ill. App. Ct. 2005). Autotech asserts that ADC owed it fiduciary duties based on the existence of a partnership or joint venture relationship or special circumstances.

Fiduciary duties exist as a matter of law in certain relationships including partnerships and joint ventures. The burden of proving the existence of a partnership or joint venture is on the person who claims such a relationship exists. A partnership is an association of two or more persons to carry on, as co-owners, a business for profit. 805 ILCS 105/6(1). A joint venture is similar but has a single enterprise. *Harmon v. Martin*, 395 Ill. 595, 71 N.E.2d 74, 83 (Ill. 1947). To establish a partnership, the plaintiff must show that the parties (1) joined together to carry on a trade or venture, (2) for their common benefit,

(3) with each contributing property or services to the enterprise, and (4) having a community of interest in the profits. *Maloney v. Pihera*, 215 Ill. App. 3d 30, 573 N.E.2d 1379, 1387, 158 Ill. Dec. 194 (Ill. App. Ct. 1991). To establish a joint venture, the plaintiff must prove (1) an express or implied agreement to carry on some enterprise; (2) a manifestation of intent by the parties to be associated as joint ventures; (3) a joint interest as shown by the contribution of property, financial resources, effort, skill or knowledge; (4) a degree of joint proprietorship or mutual right to the exercise of control over the enterprise; and (5) a provision for joint sharing of profits and losses. *Trustmark Ins. Co. v. Gen & Cologne Life Re of America*, 424 F.3d 542, 547 (7th Cir. 2005).

Other than the text of the contracts referring to "marriage" and "partners", *see Yokel v. Hite*, 348 Ill. App. 3d 703, 809 N.E.2d 721, 726, 284 Ill. Dec. 155 (Ill. App. Ct. 2004) (finding that nomenclature in a contract is not dispositive of the relationship), Autotech failed to offer any evidence showing a partnership or joint venture. In fact, the evidence indicated the opposite: the contract expressly prohibited joint control; there was no provision for profit sharing and loss; the parties did not file joint tax returns; and there was no evidence of an intent to be associated as a partnership or joint venture. The district court correctly determined that there was no partnership or joint venture to support a fiduciary relationship.

Special circumstances also can give rise to a fiduciary duty. To determine if special circumstances exist, courts consider the degree of kinship between the parties; the disparity in age, health, mental condition, education, and business experience between the parties; and the extent to which the servient party entrusted his business affairs to the dominant party and placed trust and confidence in it. *Crichton*, 832 N.E.2d at 854. Autotech asserts that a confidential relationship existed because ADC had exclu-

sive control over customer relationships. In an attempt to show kinship, Autotech also cites to correspondence between the two CEOs, Shalabh Kumar and Timothy Hohmann. The correspondence simply demonstrates that the businessmen developed a personal friendship derived in part from their respective moral and religious approach to business. This is insufficient to establish special circumstances where fiduciary duties are owed. We find that the district court did not err in reaching the same conclusion.

**B. Expert Testimony**

Under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 597, 113 S.Ct. 2786, 125 L.Ed. 2d 469 (1993), the district court is a "gate-keeper" who determines whether proffered expert testimony is reliable and relevant before accepting a witness as an expert. We review the district court's implementation of the *Daubert* framework *de novo*. *United States v. Hall*, 165 F.3d 1095, 1101 (7th Cir. 1999). Once we are convinced that the district court properly applied the *Daubert* framework, however, we review the decision to admit or exclude expert testimony for an abuse of discretion. *United States v. Young*, 316 F.3d 649, 656 (7th Cir. 2002).

Autotech contends that the district court erred by excluding Peter Martin's testimony under *Daubert* and Federal Rule of Evidence 702. Based on his 26 years of experience in software development, review of the EZTouch software, and review of advertisements about C-More, Martin testified that the features of C-More could not be developed independently of EZTouch. At no time, however, did Martin examine the C-More software. Moreover, he never conducted tests on the product. The district court found this methodology unreliable because computer experts must do more than read advertise-

ments. To qualify as an expert on software, an expert should, at a minimum, examine the product and software upon which the expert bases his opinion. Accordingly, we conclude that the district court properly found that Peter Martin was an unqualified expert and that his opinion was unreliable.

### III.  Conclusion

The judgment of the district court is AFFIRMED.

A true Copy:

      Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*
