# Illinois Official Reports

## Appellate Court

---

*Olive Portfolio Alpha, LLC v. 116 West Hubbard Street, LLC*,
2017 IL App (1st) 160357

---

| | |
|---|---|
| Appellate Court Caption | OLIVE PORTFOLIO ALPHA, LLC, Assignee of Olive Portfolio, LLC, Successor to BMO Harris Bank N.A., f/k/a Harris N.A., Plaintiff-Appellee, v. 116 WEST HUBBARD STREET, LLC; BRIDGEVIEW BANK AND TRUST; UNKNOWN OWNERS; NONRECORD CLAIMANTS; UNKNOWN TENANTS, OCCUPANTS, and LEASEHOLDS, Defendants (116 West Hubbard Street, LLC, Defendant-Appellant). |
| District & No. | First District, Fourth Division<br>Docket No. 1-16-0357 |
| Filed | March 23, 2017 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 14-L-1929; the Hon. Michael F. Otto, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Andrew Jacobson and Shelley Smith of Brown Udell Pomerantz Delrahim, Ltd., of Chicago, for appellant.<br><br>Edward L. Filer and Adam C. Toolsey, of Freeborn & Peters LLP, of Chicago, for appellee. |

JUSTICE McBRIDE delivered the judgment of the court, with opinion.
                     Presiding Justice Ellis and Justice Burke concurred in the judgment and opinion.


**OPINION**

¶ 1        Plaintiff, Olive Portfolio Alpha, LLC, assignee of Olive Portfolio, LLC, successor to BMO Harris Bank N.A., f/k/a Harris N.A., filed a mortgage foreclosure complaint in February 2014, against defendant 116 West Hubbard Street, LLC. In June 2015, the trial court granted plaintiff's motion for summary judgment against defendant and entered a judgment of foreclosure and sale in plaintiff's favor. A judicial sale was held, and plaintiff filed a motion to confirm the sale in September 2015. In December 2015, the trial court granted plaintiff's motion to confirm the sale.

¶ 2        Defendant appeals, arguing that (1) the trial court erred in granting summary judgment when defendant had raised affirmative defenses and denied defendant's motion for an extension of time to file a response, (2) the trial court erred in denying discovery pursuant to Illinois Supreme Court Rule 191(b) (Ill. S. Ct. R. 191(b) (eff. Jan. 4, 2013)), and (3) the trial court erred in granting counsel's motion to withdraw simultaneously with approving the judicial sale and not providing defendant 21 days to obtain new counsel and file a response.

¶ 3        In February 2014, plaintiff filed its complaint seeking foreclosure of a mortgage on the commercial property located at 116 West Hubbard Street in Chicago, owned by defendant. An amended complaint was subsequently filed in September 2014. The amended complaint stated that in February 2007, Harris N.A. (Harris) agreed to loan defendant up to $7.2 million under a promissory note, which provided for five months of interest payments with a maturity date of August 20, 2007, with one balloon payment of all outstanding principal and interest due from defendant. As collateral on the loan, defendant granted a mortgage on the commercial property to Harris. Also in February 2007, Harris agreed to loan defendant up to $300,000 in a promissory note with the same initial payment terms.

¶ 4        In June 2008, the two loans were consolidated into one loan with a new promissory note for $7.5 million. The new note stated that interest payments were to be paid by defendant beginning in July 2008, with a maturity date of February 20, 2009, for a balloon payment of outstanding principal and interest. A series of amendments and extensions were made on the original loans. In January 2012, an amended promissory note provided that defendant would pay Harris $7,466,056.94, through monthly $5000 plus interest payments retroactive to September 2011, with a maturity date of August 13, 2013 (hereinafter the 2012 Note).

¶ 5        In February 2013, BMO Harris (f/k/a Harris) assigned its interest in the 2012 Note to Olive Portfolio, LLC. The assignment was subsequently recorded with the Cook County recorder of deeds. The document was titled "Endorsement and Allonge[1] to Promissory Note," it was signed by a vice president of BMO Harris, and stated:

_____

[1]"Allonge" is defined in Black's Law Dictionary as "A slip of paper sometimes attached to a negotiable instrument for the purpose of receiving further indorsements when the original paper is filled

"PAY to the order of Olive Portfolio, LLC, a Delaware limited liability company, without warranty, representation or recourse of any kind, that certain Amended and Restated Promissory Note dated January 1, 2012 in the original principal amount of $7,466,056.94 made by 116 West Hubbard Street, LLC, an Illinois limited liability company, to the order BMO Harris Bank National Association (f/k/a Harris, N.A.)."

¶ 6 In July 2013, Olive Portfolio, LLC, conveyed its interest in the promissory note to plaintiff through an assignment, which was subsequently recorded. The allonge stated:

"THIS ALLONGE IS TO BE ATTACHED TO AND MADE AN INTEGRAL PART of the following instrument:

Note: Amended and Restated Promissory Note

Dated: January 1, 2012

Payable by: 116 WEST HUBBARD STREET, LLC

Payable to the Order of: BMO HARRIS, N.A., F/K/A HARRIS, N.A.

Original Principal Amount: Seven Million Four Hundred Sixty-Six Thousand Fifty-Six and 94/100 Dollars ($7,466,056.94)

PAY TO THE ORDER OF OLIVE PORTFOLIO ALPHA, LLC, A DELAWARE LIMITED LIABILITY COMPANY, WITHOUT RECOURSE AND WITHOUT REPRESENTATION OR WARRANTY, EXPRESS OR IMPLIED OR BY OPERATION OF LAW, OF ANY KIND AND NATURE WHATSOEVER.

OLIVE PORTFOLIO, LLC, a Delaware limited liability company"

¶ 7 As of August 28, 2013, the total amount due to plaintiff under the 2012 Note was $7,675,251.05, which consisted of the principal balance, interest, late charges, and other fees. Notice of default was sent to defendant.

¶ 8 In July 2014, defendant filed a motion to dismiss plaintiff's complaint under section 2-619 of the Code of Civil Procedure (735 ILCS 5/2-619 (West 2012)), arguing that plaintiff failed to properly allege or demonstrate that it owned and/or was a holder of the 2012 Note and how it acquired its interest in the 2012 Note. On September 22, 2014, the trial court granted defendant's motion in part and denied it in part. The motion was granted "as to failure to attach allonge between BMO [Harris] and Olive Portfolio" and denied without prejudice for the remaining allegations. In the same order, the trial court noted that "plaintiff presented to court original of amended and restated promissory note, February 27, 2013 Allonge and July 25, 2013 Allonge," and "that July 25, 2013 Allonge does not have binder holes at top and neither allonge has staple holes or marks." On September 26, 2014, plaintiff filed its amended complaint. No motion to dismiss the amended complaint was filed.

¶ 9 In October 2014, plaintiff paid approximately $900,000 in unpaid real estate taxes on the subject property to avoid the issuance of a tax deed.

¶ 10 Subsequent to the filing of the amended complaint, defendant filed its answer and affirmative defenses in November 2014. Defendant raised three affirmative defenses: (1)

---

with indorsements. • Former UCC § 3-202 required that indorsements be made on the instrument unless there was no space—and only then could an allonge be used. Current UCC § 3-204(a) eliminates that requirement and provides that 'a paper affixed to the instrument is part of the instrument.' The UCC comment makes it clear that the allonge is valid even if space is available on the instrument." Black's Law Dictionary (10th ed. 2014).

plaintiff lacks standing to bring this action because plaintiff is a foreign limited liability company (LLC) that does business in Illinois but failed to register in Illinois prior to filing the instant action; (2) plaintiff is not a valid holder of the 2012 Note because the allonge was not affixed to the 2012 Note at the time of filing or when it was negotiated to plaintiff; and (3) plaintiff is barred from charging late fees based on a flat fee.

¶ 11    In December 2014, plaintiff sought leave to file its answers to defendant's affirmative defenses. Plaintiff answered that the first affirmative defense presented "simply legal conclusions which include no factual allegations that can be admitted or denied. Notwithstanding, [plaintiff] denies that it lacks standing or that its claims against [defendant] are barred." As for the second affirmative defense, plaintiff admitted that it filed the foreclosure action and that it was the holder of the note through an allonge. Plaintiff answered that defendant's claims regarding the UCC requirements that the allonge be affixed to the note were legal conclusions with no factual allegations. Plaintiff denied defendant's allegation that the allonge was not affixed to the note at the time the action was filed or when the note was negotiated to plaintiff.

¶ 12    In March 2015, plaintiff filed its motion for summary judgment against defendant and judgment of foreclosure and sale. In March 2015, the trial court granted defendant 40 days to file its response to the summary judgment motion: May 15, 2015. The motion was set for hearing on June 16, 2015.

¶ 13    On May 15, 2015, defendant filed two motions, a motion for extension of time to file a response and a motion for additional discovery under Rule 191. The motion for extension of time sought an extension until the Rule 191 discovery was completed. The motion for discovery under Rule 191 stated that discovery was necessary for two limited areas: (1) plaintiff's relationship with Sabal Financial Group LP (Sabal), a nonparty and plaintiff's loan servicer, and (2) the transaction through which plaintiff and its predecessor Olive Portfolio acquired the loan from BMO Harris. Defendant also attached deposition notices to its motion. The notices were for two Sabal employees, a former associate of Olive Portfolio, and Olive Portfolio's "most knowledgeable" person.

¶ 14    On June 16, 2015, the trial court granted plaintiff's motion for summary judgment and judgment of foreclosure and sale. The court also denied defendant's two motions. Subsequently the date of the judicial sale was set for July 27, 2015. On July 16, 2015, defendant filed an emergency motion to stay the judicial sale and motion to reconsider the June rulings, which the trial court denied in August 2015. Defendant later filed and withdrew a second emergency motion to stay the judicial sale, indicating that the parties were negotiating a potential settlement. In September 2015, defendant filed a third emergency motion to stay the judicial sale, stating the same settlement negotiations as its basis, which the trial court denied.

¶ 15    On September 18, 2015, a judicial sale was conducted, and plaintiff was the highest bidder with a credit bid of $6 million. On September 23, 2015, plaintiff filed a motion to approve the report of sale, which was noticed for October 14, 2015. The motion included a request for a deficiency judgment against defendant in excess of $3 million. The motion also attached a broker's opinion valuing the price of the property between $5,087,898 and $5,723,886, which was less than the bid by plaintiff.

¶ 16    On October 7, 2015, defendant's counsel filed a motion to withdraw, citing "irreconcilable differences" between defendant and counsel. The motion was also noticed for

October 14. On that date, the trial court observed that defendant's counsel had not included proof of service of his motion to defendant. The court entered and continued the motion to withdraw and set a briefing schedule on the motion to approve the sale. No response to the motion to approve the sale was filed by defendant's counsel in the intervening time.

¶ 17 On December 2, 2015, the trial court granted plaintiff's motion to approve the report of sale. The court also entered an order granting counsel's motion to withdraw. Defendant was given 21 days to seek new counsel. On December 23, 2015, new counsel appeared for defendant and filed a motion to reconsider the December 2 orders, which the trial court denied in January 2016.

¶ 18 This appeal followed.

¶ 19 Defendant contends that the trial court erred in granting summary judgment in favor of plaintiff and entering the judgment of foreclosure and sale because its affirmative defenses remained pending and the trial court abused its discretion in denying its motions for an extension of time to respond to the motion for summary judgment and for discovery under Rule 191(b).

¶ 20 Summary judgment is appropriate where the pleadings, depositions, and admissions on file, together with any affidavits and exhibits, when viewed in the light most favorable to the nonmoving party, indicate that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2014). We review cases involving summary judgment *de novo*. *Ragan v. Columbia Mutual Insurance Co.*, 183 Ill. 2d 342, 349 (1998).

¶ 21 First, we consider whether the trial court abused its discretion in denying defendant's motion for discovery. Defendant failed to file a response to plaintiff's motion for summary judgment but rather on the date a response was due, filed a motion requesting additional discovery under Rule 191(b). Defendant has never contested the merits of the action, specifically that it defaulted on its mortgage and note originally granted to Harris. Plaintiff maintains that no additional discovery was necessary because both arguments advanced by defendant presented legal questions.

¶ 22 Rule 191(b) provides:

"If the affidavit of either party contains a statement that any of the material facts which ought to appear in the affidavit are known only to persons whose affidavits affiant is unable to procure by reason of hostility or otherwise, naming the persons and showing why their affidavits cannot be procured and what affiant believes they would testify to if sworn, with his reasons for his belief, the court may make any order that may be just, either granting or refusing the motion, or granting a continuance to permit affidavits to be obtained, or for submitting interrogatories to or taking the depositions of any of the persons so named, or for producing documents in the possession of those persons or furnishing sworn copies thereof. The interrogatories and sworn answers thereto, depositions so taken, and sworn copies of documents so furnished, shall be considered with the affidavits in passing upon the motion." Ill. S. Ct. R. 191(b) (eff. Jan. 4, 2013).

¶ 23 "Failure to comply with Rule 191(b) defeats an objection on appeal that insufficient time for discovery was allowed." *Giannoble v. P&M Heating & Air Conditioning, Inc.*, 233 Ill. App. 3d 1051, 1064 (1992). "A trial court is afforded considerable discretion in ruling on

matters pertaining to discovery, and thus its rulings on discovery matters will not be reversed absent an abuse of that discretion." *Kensington's Wine Auctioneers & Brokers, Inc. v. John Hart Fine Wine, Ltd.*, 392 Ill. App. 3d 1, 11 (2009). "An abuse of discretion will be found where no reasonable person would take the view adopted by the trial court." *Dawdy v. Union Pacific R.R. Co.*, 207 Ill. 2d 167, 177 (2003).

¶ 24    Defendant asserted that additional discovery was necessary to determine the relationship between plaintiff and its loan servicer, Sabal. According to defendant, the discovery related to two of its affirmative defenses, *i.e.*, plaintiff lacked standing to file the action because it failed to register as a business in Illinois and plaintiff was not a valid holder of the note because the allonge was not affixed to the note. In support of its motion, defendant attached affidavits from its client representative and its attorney.

¶ 25    Nikki Dumas-Accera submitted the first affidavit attached to the Rule 191(b) motion as defendant's representative. She stated that additional discovery is needed because the summary judgment motion was supported by an affidavit of John Calder which disclosed a relationship between plaintiff and Sabal. Defendant required discovery into that relationship because plaintiff had maintained that it was "a single purpose entity that does *not* transact business in Illinois, all the while hiding the self-proclaimed agent Sabal, which may—and as public record reveals does—transact business in Illinois." (Emphasis in original.) Dumas-Accera stated that oral discovery was needed to determine the "manner and method in which Sabal serviced the loan and maintained the business records" relied upon in the Calder affidavit. She believed that if Calder was questioned, he would testify that Sabal is an agent of plaintiff, "whose actions and conduct have the affect of binding Plaintiff, and whose actions and conduct can be imputed to Plaintiff." Further, she stated that "Calder's testimony regarding Sabal's business will establish that Sabal does in fact transact business in Illinois on behalf of Plaintiff." Dumas-Accera additionally stated that she believed that Calder would testify that he has "no first-hand knowledge of how much is purportedly due and owing under the Note because Plaintiff and Sabal never maintained any business records prior to Plaintiff's purported acquisition of the Note ***."

¶ 26    Dumas-Accera also stated that additional discovery was necessary because her attorney's inspection of the original loan documents "revealed credible evidence that the original allonge from Olive Portfolio, LLC, to Plaintiff *** was never affixed to the original Note, as required by 810 ILCS 5/3-204(a)." She stated that additional discovery was needed into the chain of custody of the allonge and note. She believed that "George Sears, John Calder, and R. Patterson Jackson will have actual knowledge regarding the physical characteristics of the loan documents."

¶ 27    The second affidavit was from defendant's attorney. Counsel described his inspection of the original note, the first allonge from BMO Harris to Olive Portfolio, and the second allonge from Olive Portfolio to plaintiff. He specifically noted all hole-punches and staple marks in the documents, and that the second allonge did not contain any marks and was not affixed to the note.

¶ 28    Initially, we observe that an affidavit from an attorney does not comply with Rule 191(b), which requires affidavits from the party. See Ill. S. Ct. R. 191(b) (eff. Jan. 4, 2013); see also *Crichton v. Golden Rule Insurance Co.*, 358 Ill. App. 3d 1137, 1151 (2005) (finding affidavit signed by attorney to be "deficient"); *Giannoble*, 233 Ill. App. 3d at 1064 (finding affidavit under Rule 191(b) to be "fatally defective" in part because it was signed by the attorney, not

a party). Additionally, appellate counsel argued for the first time at oral argument that the attorney's affidavit created a question of material fact as to whether the second allonge was paper clipped to the note. However, under Illinois Supreme Court Rule 341(h)(7), "[p]oints not argued are waived and shall not be raised in the reply brief, in oral argument, or on petition for rehearing." Ill. S. Ct. R. 341(h)(7) (eff. Jan. 1, 2016); *Doe v. University of Chicago Medical Center*, 2015 IL App (1st) 133735, ¶ 55 (citing *McCann v. Presswood*, 308 Ill. App. 3d 1068, 1073 (1999)). Since this argument was first raised at oral argument, it has been forfeited and we need not consider the merits.

¶ 29    Further, Dumas-Accera's affidavit only offers a general belief of what testimony would be disclosed during discovery. "The affidavit must state specifically what the affiant believes the prospective witness would testify to if sworn and reasons for the affiant's belief." *Giannoble*, 233 Ill. App. 3d at 1065. "Rule 191(b) requires facts, not conclusions." *Id.*; see also *Wynne v. Loyola University of Chicago*, 318 Ill. App. 3d 443, 456 (2000) (finding that allegations in a "general sense" of what relevant information proposed witnesses would provide for the plaintiff's claim was not sufficient to show compliance with Rule 191(b)). Here, Dumas-Accera's affidavit was based on speculation and supported by pages printed from the Internet to support her conclusion that Sabal conducted business on behalf of plaintiff in Illinois. Moreover, she failed to state in her affidavit that the material facts were known only to persons whose affidavits the affiant was unable to procure, *i.e.*, Calder, Sears, and Jackson. See *Crichton*, 358 Ill. App. 3d at 1151; *Wynne*, 318 Ill. App. 3d at 456. Further, her affidavit offers only general speculation regarding plaintiff's status as holder of the 2012 Note and provides no specific facts that she believed any of the named witnesses would present through testimony.

¶ 30    Next, we address the discovery requests related to whether plaintiff was the proper holder of the 2012 Note through the second allonge.

¶ 31    "The mere fact that a copy of the note is attached to the complaint is itself *prima facie* evidence that the plaintiff owns the note." *Parkway Bank & Trust Co. v. Korzen*, 2013 IL App (1st) 130380, ¶ 24. "For over 25 years, the Foreclosure Law has been interpreted as not requiring plaintiffs' production of the original note, nor any specific documentation demonstrating that it owns the note or the right to foreclose on the mortgage, other than the copy of the mortgage and note attached to the complaint." *Id.* ¶ 26 (citing *First Federal Savings & Loan Ass'n of Chicago v. Chicago Title & Trust Co.*, 155 Ill. App. 3d 664, 665-67 (1987)).

¶ 32    Here, in addition to attaching the note, mortgage, and the allonges to the amended complaint, the original documents were presented in open court. In its September 2014 order ruling on defendant's motion to dismiss, the trial court included its observations of the documents, "plaintiff presented to [the] court [the] original of [the] amended and restated promissory note, February 27, 2013 Allonge and July 25, 2013 Allonge," and "that July 25, 2013 Allonge does not have binder holes at top and neither allonge has staple holes or marks." Plaintiff has never disputed the absence of any holes to attach the allonge to the original note, but has maintained that the allonge was affixed by a paper clip. Calder stated in his affidavit in support of summary judgment that both allonges "are affixed by way of a paper clip." The trial court's acceptance of the documents presented in open court apparently resolved this claim, but we will review the merits of defendant's claim in any event.

¶ 33    Section 3-204(a) of the Uniform Commercial Code (UCC) pertains to indorsements of a negotiable instrument and includes the following language, "For the purpose of determining whether a signature is made on an instrument, a paper affixed to the instrument is a part of the instrument." 810 ILCS 5/3-204(a) (West 2012). The crux of defendant's contention turns on whether the allonge could be properly "affixed" by a paper clip. It is unclear what additional discovery would disclose when plaintiff has not contested this issue and the documents were physically presented to the trial court for inspection.

¶ 34    Defendant admits that no Illinois case has determined what "affixed" under section 3-204 means but cites two federal cases which suggest that stapling can satisfy the statute. In *Berg v. EHome Credit Corp.*, No. 08 C 05530, 2011 WL 761486, at *3 (N.D. Ill. Feb. 25, 2011), the district court found that the defendant holder sufficiently established its possession of the subject note and two allonges affixed to the note where an affidavit stated that "the original note and allonges were physically attached to each other and to the folder via a metal fastener inserted between two holes at the top of each page." The district court also observed that,

> "The statute does not define 'affixed.' 'It is appropriate to employ a dictionary to ascertain the meaning of an otherwise undefined word or phrase.' *Landis v. Marc Realty, L.L.C.*, 235 Ill. 2d 1, 8 (Ill. 2009). The dictionary defines 'affix' as 'secure to something; attach.' The American Heritage College Dictionary, 3d. Edition, Houghton Mifflin Co., Boston, MA, 2000." *Berg*, 2011 WL 761486, at *3.

¶ 35    In *In re Schmeglar*, 523 B.R. 119, 123 (Bankr. N.D. Ill. 2014), the court observed that "Illinois courts have not ruled on whether an allonge is 'affixed' under the meaning of § 3-204 of the UCC. However, multiple Courts interpreting similar provisions have held that stapling an allonge containing an indorsement to an instrument at the time of signing meets the requirement."

¶ 36    However, plaintiff cites a federal case from the district court in New Hampshire which interpreted identical language of the UCC. In *Galvin v. EMC Mortgage Corp.*, No. 12-cv-320-JL, 2014 WL 4980905 (D.N.H. Oct. 3, 2014), the plaintiff challenged the indorsement of the note to the holder. The district court pointed out that the New Hampshire version of the UCC "does not require 'permanent' affixation of an allonge to a note." *Id.* at *8. "An earlier version of the UCC did require an allonge to be 'so firmly affixed' to a negotiable instrument 'as to become a part thereof.' N.H. Rev. Stat. Ann. § 382-A:3-202(2) (1993). Under that version of the UCC, by which some states still abide, some courts took the view that attaching an allonge to a note with a paper clip was not sufficient affixation." *Id.*

> "Over 20 years ago, however, New Hampshire adopted a revised version of the UCC providing that an allonge need only be 'affixed to the instrument' to be considered 'part of the instrument.' N.H. Rev. Stat. Ann. § 382-A:3-204(a). Although the court has found no case law discussing whether, under this version of the UCC, an allonge may be 'affixed' to a note by means of a paper clip, many commentators have taken the view that the omission of the adverb 'firmly' from the revised version allows just that. One respected treatise remarks, for example:
>
> > ['][The revised] section merely requires that the paper be "affixed" to the instrument. Any manner of attaching the paper to the instrument would seem to be sufficient. There is no requirement that the paper containing the indorsement be firmly attached to the instrument. Stapling the paper to the instrument is clearly

sufficient. Even paper clipping the allonge to the instrument should be sufficient.[']

> 6B Lary Lawrence, *Anderson on the Uniform Commercial Code* § 3-204:12R, at 240 (3d ed.2003); *see also* 6 William D. Hawkland et al., *Hawkland's Uniform Commercial Code Series* § 3-204:3 (2012) ('Section 3-204(a) omitted old Article 3's requirement that the allonge be firmly affixed. Thus, a paper clipped or stapled to an instrument is sufficient as an allonge.').

> The court agrees with these authorities that attachment of an allonge to an instrument by means of a paper clip is sufficient to satisfy an § 382-A:3-204(a)'s requirement that the allonge be 'affixed to the instrument.' *Cf. Federal Home Loan Mortg. Corp. v. Madison*, No. 09-cv-1508, 2011 WL 2690617, at *4 (D. Ariz. July 12, 2011) (holding that an 'allonge is sufficiently affixed to the promissory note when secured by an Acco fastener')." *Id.*

¶ 37    As previously noted, the New Hampshire statutory language is identical to relevant language in section 3-204, "a paper affixed to the instrument is a part of the instrument." Compare 810 ILCS 5/3-204(a) (West 2014), with N.H. Rev. Stat. Ann. § 382-A:3-204(a) (1994). We agree with the analysis in *Galvin*. The cardinal rule in construing a statute, to which all others are subordinate, is to ascertain and give effect to the intent of the legislature. *Alvarez v. Pappas*, 229 Ill. 2d 217, 228 (2008). To determine legislative intent, we turn to the language of the statute, which is the best indicator of its intent. *Id.* We must give the statutory language its "plain, ordinary, and popularly understood meaning," and "[w]here the language is clear and unambiguous, the statute must be given effect as written without resort to further aids of statutory construction." *Id.* "[A]ll words and phrases must be interpreted in light of other relevant provisions of the statute and must not be construed in isolation." *Brucker v. Mercola*, 227 Ill. 2d 502, 514 (2007). "Each word, clause and sentence of the statute, if possible, must be given reasonable meaning and not rendered superfluous." *Id.*

¶ 38    As the district court observed in *Berg*, the statute did not define "affixed" and the dictionary definition was to "secure to something; attach." The statute does not limit the language of affix to only permanent forms of attaching. Thus, we conclude that a paper clip is sufficient to satisfy the requirement of affixing an allonge to an instrument under section 3-204. Accordingly, defendant did not need further discovery to establish that the allonge was affixed to the 2012 Note, and the trial court did not abuse its discretion for denying this request for additional discovery.

¶ 39    Defendant's other request for additional discovery related to plaintiff's standing to pursue the action. It is undisputed that plaintiff is a foreign LLC, registered in Delaware. Defendant argues that "Illinois requires that 'a foreign limited liability company [such as Olive Alpha], may not maintain a civil action in any court of this State until the limited liability company is admitted to transact business in this State.' 805 ILCS 180/45-45(a)."

¶ 40    The complete text of section 45-45(a) of the Limited Liability Company Act provides

> "[a] foreign limited liability company transacting business in this State may not maintain a civil action in any court of this State until the limited liability company is admitted to transact business in this State." 805 ILCS 180/45-45(a) (West 2014).

¶ 41    Defendant asserts that plaintiff provided inconsistent information about its relationship and its loan servicer, Sabal. Defendant relies on different descriptions of Calder's

employment, *i.e.*, in an answer to interrogatories Calder indicated that he was representing plaintiff, whereas in the summary judgment motion he stated that he was employed by Sabal as the servicer for plaintiff. Defendant contends that under agency law, Sabal's business activities in Illinois could be imputed to plaintiff. Defendant also argues that additional discovery was necessary to review Sabal's accounting methods of the mortgage at issue.

¶ 42 "Standing is an affirmative defense and, as such, it is the defendant's burden to prove that the plaintiff does not have standing." (Emphasis omitted.) *Parkway Bank*, 2013 IL App (1st) 130380, ¶ 24. "It is not the plaintiff's burden to prove it does have standing." *Id.* However, defendant has not satisfied its burden to establish that plaintiff lacks standing. Defendant has cited no authority that the holder of a mortgage is transacting business in Illinois, such that registration is required, in order to pursue a foreclosure action nor that a loan servicer's actions separate from its work on the subject mortgage can be imputed to the holder. Supreme Court Rule 341(h)(7) requires an appellant to include in its brief an "[a]rgument, which shall contain the contentions of the appellant and the reasons therefor, with citation of the authorities and the pages of the record relied on." Ill. S. Ct. R. 341(h)(7) (eff. July 1, 2008). Moreover, it is well-settled that a contention that is supported by some argument but does not cite any authority does not satisfy the requirements of Rule 341(h)(7), and bare contentions that fail to cite any authority do not merit consideration on appeal. *Wasleff v. Dever*, 194 Ill. App. 3d 147, 155-56 (1990). Defendant has not provided any authority to support its assertions beyond bare citation to a statute and citations to general agency and discovery principles, and therefore, this claim has been forfeited. Accordingly, the trial court did not abuse its discretion in denying defendant's motion for discovery on this issue.

¶ 43 Since we have concluded that the trial court was within its discretion to deny defendant's motion for discovery, we turn to defendant's assertion that the trial court erred in granting plaintiff's summary judgment motion. Defendant contends that "at a minimum" the trial court should have granted it an extension to respond to plaintiff's motion. We disagree.

¶ 44 Defendant cites *U.S. Bank, N.A. v. Kosterman*, 2015 IL App (1st) 133627, to support its argument that summary judgment was improper. We find *Kosterman* distinguishable from the circumstances present in this case. There, the trial court struck the defendants' affirmative defense of lack of standing, holding that lack of standing was not an affirmative defense. *Id.* ¶ 9. The *Kosterman* court held that the trial court had erred because the appellate court had held several times in the previous two years that lack of standing was an affirmative defense that must be raised in the defendant's answer or else it would be forfeited. *Id.* ¶ 10.

¶ 45 The reviewing court then turned to the trial court's grant of summary judgment in favor of the plaintiff. The plaintiff filed a motion for summary judgment two weeks after the defendant's affirmative defenses were stricken. The motion was supported by an affidavit from a vice president of loan documentation for a bank, but the plaintiff failed to attach any of the documents on which the supporting affidavit relied, as required by Rule 191(a). *Id.* ¶ 12. The defendants attached affidavits under Rule 191(b) to their response to the motion for summary judgment asserting that they were unable to respond to the motion for summary judgment without being able to review the records on which the plaintiff relied. *Id.* The plaintiff then faxed a loan transaction history to the defendant, but this document had not been certified by the affiant who provided the affidavit in support of the plaintiff's motion for summary judgment. *Id.* ¶ 13. Moreover, the affiant averred that she relied on " 'data compilations, electronically imaged documents, and others,' " but the loan transaction history

apparently did not correspond to the affiant's statements. *Id.* The plaintiff responded that the documents were too numerous to make available. The defendants then attempted to depose the affiant. *Id.* ¶ 14. The trial court granted summary judgment in favor of the plaintiff. The plaintiff moved to strike the defendants' outstanding discovery requests and to strike the deposition of the affiant. *Id.* The trial court subsequently struck all of the defendants' outstanding discovery requests. *Id.*

¶ 46    The majority in *Kosterman* held that the trial court's ruling on discovery was an abuse of discretion because the defendants "never even had an opportunity to explore their defenses." *Id.* ¶ 15. The court further held that the error was compounded because the records on which the plaintiff's affiant relied were never made available to the defendants, and the defendants were precluded from deposing "the only person offering testimony against them." *Id.* ¶ 17. The court concluded that, without the records or the ability to conduct a deposition of the plaintiff's affiant, the defendants had no meaningful chance to challenge the plaintiff's contentions. *Id.*

¶ 47    Here, in contrast, defendant was permitted to raise its affirmative defenses and propound discovery to support its defenses. Defendant submitted interrogatories to plaintiff, which it issued in response. Defendant filed its answer to the amended complaint and its affirmative defenses in November 2014. Plaintiff filed its motion for summary judgment on March 24, 2015, and presented it before the trial court three days later. The trial court gave defendant 40 days, until May 15, 2015, to file its response. On May 15, defendant did not file a response, but instead filed the motion for discovery and a motion for extension of time to respond. The motion for an extension of time asked for an extension until after discovery was completed, it did not make a request in the alternative for an extension to respond to the motion.

¶ 48    Further, defendant contends that the discovery requested in its motion was revealed only when plaintiff filed the summary judgment motion. Defendant, nevertheless, waited the full 40 days granted for a response to file its request for discovery and extension of time. No action was taken in the intervening time. This case is not analogous to *Kosterman* and we find defendant's reliance to be misplaced. Here, defendant had a significant period of time to engage in discovery and to respond to plaintiff's motion for summary judgment but failed to take timely action. Defendant has asserted no material fact to preclude summary judgment beyond his allegations in the motion for discovery, which have already been considered and rejected. Since defendant has failed to raise a question of material fact such that summary judgment was improper, we find that the trial court did not err in granting summary judgment in favor of plaintiff.

¶ 49    Next, defendant argues that the trial court erred in simultaneously confirming the judicial sale and granting its counsel's motion to withdraw. Specifically, defendant asserts that the trial court erred in failing to grant it 21 days to obtain new counsel and file a response to the motion to confirm the judicial sale. According to defendant, the trial court "artificially stag[ed] the sequence of the orders by a single moment so that the Sale Confirmation Motion was technically granted first," which allowed the court to avoid the requirements of Illinois Supreme Court Rule 13 (Ill. S. Ct. R. 13 (eff. July 1, 2013)) and prejudiced defendant.

¶ 50    Plaintiff filed its motion to approve the report of sale on September 23, 2015, which was set to be presented in court on October 14, 2015. Defendant's former counsel initially filed his motion to withdraw on October 7, 2015, which was also noticed for October 14. On that date, defendant's counsel acknowledged to the trial court that he had not properly served

defendant with his motion to withdraw. The motion was entered and continued, and a briefing schedule was set for the motion to approve the sale. Defendant was given until November 4, 2015, to file its response to the motion to approve sale. The trial court advised defendant's counsel, "So, you know, if you talk to your client and they want someone else to leap in and file a response that they intend to file that's between you and them. For now you're counsel. I don't know they got notice of your motion so I can't let you out." Both motions were set for hearing on December 2, 2015. No response was filed by defendant in the interim.

¶ 51        On December 2, 2015, the trial court granted the motion to confirm the sale. Counsel informed the court that he did not prepare a response to the motion because he was "ethically" prohibited from filing anything on defendant's behalf due to the "irreconcilable differences" with defendant. After some discussion, the trial court entered the orders as follows:

> "I am going to grant the motion to confirm sale. Having granted that motion, now that you do have return receipt from the client, I see no reason not to allow you to withdraw at this point."

¶ 52        Illinois Supreme Court Rule 13(c), provides, in relevant part:

> "(2) Notice of Withdrawal. An attorney may not withdraw his appearance for a party without leave of court and notice to all parties of record, and, unless another attorney is substituted, he must give reasonable notice of the time and place of the presentation of the motion for leave to withdraw, by personal service, certified mail, or a third-party carrier, directed to the party represented by him at his last known business or residence address. Such notice shall advise said party that to insure notice of any action in said cause, he should retain other counsel therein or file with the clerk of the court, within 21 days after entry of the order of withdrawal, his supplementary appearance stating therein an address at which service of notices or other documents may be had upon him.
>
> (3) Motion to Withdraw. The motion for leave to withdraw shall be in writing and, unless another attorney is substituted shall state the last known address of the party represented. The motion may be denied by the court if the granting of it would delay the trial of the case, or would otherwise be inequitable.
>
> (4) Copy to be Served on Party. If the party does not appear at the time the motion for withdrawal is granted, either in person or by substitute counsel, then, within three days of the entry of the order of withdrawal, a copy thereof shall be served upon the party by the withdrawing attorney in the manner provided in paragraph (c)(2) of this rule, and proof of service shall be made and filed." Ill. S. Ct. R. 13(c)(2), (c)(3), (c)(4) (eff. July 1, 2013).

¶ 53        Defendant contends that under Rule 13(c)(2), the trial court should have delayed ruling on the motion to confirm the sale until defendant could obtain new counsel. According to defendant, the failure to continue the motion to confirm the sale prejudiced defendant because a $3 million deficiency judgment had been entered as part of the sale confirmation since the sale price of $6 million was less than what was due under the mortgage default. Defendant cites the following reasoning from *In re Marriage of Miller*, 273 Ill. App. 3d 64, 69 (1995), "the letter and spirit of Rule 13 require a 21-day transition period and that nothing

prejudicing a client's rights should occur within the 21 days following the allowance of an attorney's withdrawal."

¶ 54 Defendant has not cited any authority finding that a trial court has to rule on motions in a specified order. Plaintiff's motion to confirm the sale was filed prior to counsel's motion to withdraw. The motion to withdraw was continued only because counsel failed to properly serve defendant, and counsel concluded that he was "ethically" prohibited from preparing a response to plaintiff's pending motion. We point out that no action occurred on the case during the 21-day period after the motion to withdraw was granted. The trial court complied with Rule 13(c).

¶ 55 Nevertheless, even if the trial court erred in granting the motion to confirm the sale without allowing a 21-day continuance, defendant has not set forth any claim of how it was prejudiced. On December 23, 2015, defendant, through new counsel, filed a motion to reconsider the order granting the motion to confirm the sale. In the motion, defendant raised no basis to reconsider the order confirming the sale. Rather, defendant objected to the court's granting the motion to withdraw without continuing the motion to confirm the sale for 21 days.

¶ 56 Under the Illinois Mortgage Foreclosure Law (Foreclosure Law) (735 ILCS 5/15-1101 *et seq.* (West 2014)), "after a judicial sale and a motion to confirm the sale has been filed, the court's discretion to vacate the sale is governed by the mandatory provisions of section 15-1508(b)." *Wells Fargo Bank, N.A. v. McCluskey*, 2013 IL 115469, ¶ 18. Section 15-1508(b) of the Foreclosure Law provides:

> "Upon motion and notice in accordance with court rules applicable to motions generally, which motion shall not be made prior to sale, the court shall conduct a hearing to confirm the sale. Unless the court finds that (i) a notice required in accordance with subsection (c) of Section 15-1507 [(735 ILCS 5/15-1507(c) (West 2014))] was not given, (ii) the terms of sale were unconscionable, (iii) the sale was conducted fraudulently, or (iv) justice was otherwise not done, the court shall then enter an order confirming the sale." 735 ILCS 5/15-1508(b) (West 2014).

¶ 57 Thus, unless defendant set forth an argument under one of the four bases listed in section 15-1508(b), the trial court was required to confirm the sale. However, defendant has at no time in the trial court nor in this court raised a claim under this statute that would have precluded the confirmation of the sale. As previously stated, the property sold at the judicial sale for $6 million, which was less than the amount due under the default and more than the broker's opinion on the value of the property. Defendant has not shown any meritorious argument it was prevented from making under section 15-1508(b) to oppose the motion to confirm sale. Accordingly, we find that the trial court properly granted plaintiff's motion to confirm the sale.

¶ 58 Based on the foregoing reasons, we affirm the decision of the circuit court of Cook County.

¶ 59 Affirmed.